IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | |
| | § | |
| RICHARD ROBERT CESARIO; JOHN | § | No. 3:16-cr-60-M |
| PAUL COOPER, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING THE WITHDRAWAL OF DEFENDANT RICHARD ROBERT CESARIO'S RETAINED COUNSEL, APPOINTING COUNSEL, AND DENYING AS MOOT THE MOTION TO DISQUALIFY COUNSEL FOR DEFENDANT RICHARD ROBERT CESARIO**

Defendants Richard Robert Cesario and John Paul Cooper are charged with violating 18 U.S.C. §§ 1349 and 2 and 42 U.S.C. §§ 1320a-7b(b)(1) and 42:1320a-7b(b)(2) in a 14-count indictment out of this district.

Cooper has filed a Motion to Disqualify Counsel for Defendant Richard Cesario, seeking to disqualify William McMurrey, Derek R. Staub, and any other lawyer employed by or associated with their law firm as Cesario's retained counsel based on an actual conflict of interest or a serious potential for conflict of interest. *See* Dkt. No. 56 (the "Disqualification Motion" or "Motion to Disqualify"). Chief Judge Barbara M. G. Lynn has referred this motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 58.

The Court held a hearing on the Disqualification Motion on September 27, 2016, and both Defendants personally appeared along with their counsel and the government's counsel. *See* Dkt. No. 66. For reasons that the Court explained on the

record, most of the hearing was conducted – and all of the evidence was taken – ex parte and in camera with only Defendants Cooper and Cesario and their respective counsel and court personnel present.

Following the hearing, Cesario filed an Unopposed Motion to Withdraw as Counsel of Record and Appoint Defendant New Counsel for Defendant Richard Cesario, *see* Dkt. No. 68 (the "Withdrawal Motion"), which Judge Lynn has also referred to the undersigned for determination, *see* Dkt. No. 70. In the motion, William "Bill" C. McMurrey and Derek R. Staub of the law firm of Lackey Hershman LLP (hereinafter, "Cesario's retained counsel") report that they "now have an actual conflict of interest in the above-styled case with their client and can no longer adequately represent Defendant Cesario because of the [government's attorney's] bias and prejudice toward" Cesario's retained counsel. Dkt. No. 68 at 2.

For the reasons explained below, the Court GRANTS the Unopposed Motion to Withdraw as Counsel of Record and Appoint Defendant New Counsel for Defendant Richard Cesario [Dkt. No. 68] and DENIES as moot the Motion to Disqualify Counsel for Defendant Richard Cesario [Dkt. No. 56].

## Legal Standards

Disqualification of Retained Defense Counsel

"[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds. But the Sixth Amendment also guarantees representation that is free from conflicts of interest."

*United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008) (citations and internal quotation marks omitted).

"Thus, there is a presumption in favor of a defendant's counsel of choice, but that presumption may be overcome by an actual conflict of interest, or by a showing of a serious potential for conflict. This is true even when a defendant expresses a desire to waive the potential conflict." *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (citations and internal quotation marks omitted); *accord United States v. Jackson*, 805 F.3d 200, 202 (5th Cir. 2015) ("The Sixth Amendment grants criminal defendants the right to assistance of counsel for [their] defense. Assistance of counsel includes the right to select an attorney of one's choosing. This right, however, is not absolute. Rather, the right to counsel of choice is limited if that counsel has an actual conflict of interest or a serious potential conflict of interest that may arise during trial. Therefore, while we recognize a presumption that a defendant is entitled to counsel of choice, that presumption may be rebutted by a showing of actual or potential conflicts of interest. This is so even if valid waivers are acquired by defense counsel." (citations and internal quotation marks omitted)).

And "the district court has an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Gharbi*, 510 F.3d at 553 (internal quotation marks omitted). "Disqualification of an attorney may be based on either of the following grounds: (a) conflict of interest, or (b) integrity of the judicial system." *United States v. Greig*, 967 F.2d 1018, 1024 n.17 (5th Cir. 1992); *accord United States*

*v. Lozano*, 158 F. App'x 632, 636-37 (5th Cir. 2005). Accordingly, a district court "has discretion to disallow a first choice of counsel that would create serious risk of conflict of interest." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 n.3 (2006).

"'A conflict exists when defense counsel places himself in a position conducive to divided loyalties.'" *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)). That is, "[a]s a general rule, a conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012) (internal quotation marks omitted).

"[A]n 'actual conflict' ... is a conflict of interest that adversely affects counsel's performance." *United States v. Preston*, ___ F. App'x ___, No. 15-30351, 2016 WL 4245450, at *7 (5th Cir. Aug. 10, 2016) (citation and internal quotation marks omitted). "An attorney's performance [is] adversely affected by a conflict of interest where counsel could [pursue] a plausible alternative defense strategy or tactic but [chooses] not to do so because of the conflict." *United States v. Apodaca*, 603 F. App'x 303, 304 (5th Cir. 2015) (citation omitted); *see also United States v. Brown*, 553 F.3d 768, 799 (5th Cir. 2008) ("An actual conflict of interest exists if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing." (footnote and internal quotation marks omitted)); *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) ("Only if counsel had to choose between the divergent or competing interests of a former or current client is there an actual

-4-

conflict." (internal quotation marks omitted)).

"A conflict is not automatically created where an attorney engages in joint representation. An actual conflict exists only where the attorney must compromise his duty of loyalty or zealous advocacy to the defendant by choosing between or blending the competing interests of the defendant and the former client." *Apodaca*, 603 F. App'x at 304 (citations omitted); *see also id.* at 304-05 (explaining that a defense attorney "represented [a co-defendant] for only four months at the beginning of the proceedings and terminated his representation of [the co-defendant] nearly 15 months before he was appointed to represent [the appellant-defendant]," that the appellant-defendant "does not allege that [the attorney] learned any confidential information that was helpful to [the co-defendant] but harmful to [the appellant-defendant]," and that "[t]hese factors weigh against the existence of a conflict of interest").

That is, "[m]ultiple representation does not necessarily create an actual conflict of interest. [T]here is an actual conflict when the attorney knows that his clients' interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty." *Preston*, 2016 WL 4245450, at *7 (citations and internal quotation marks omitted). "The question is highly fact-dependent, and involves several factors, including (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated," as well as "the character and

-5-

extent of the prior representation (i.e. whether it was transient or insubstantial)." *Id.* at *8 (citations and internal quotation marks omitted); *accord Hernandez*, 690 F.3d at 619.

But, "when reviewing a motion to disqualify an attorney based on a conflict of interest, an actual conflict need not be shown; a serious potential for conflict is sufficient grounds for disqualification." *United States v. Dockens*, 253 F.3d 706 (table), No. 00-40277, 2001 WL 498794, at *3 (5th Cir. 2001) (citing *Wheat v. United States*, 486 U.S. 153, 164 (1988)); *accord Jackson*, 805 F.3d at 203-04; *United States v. Sotelo*, 97 F.3d 782, 791 (5th Cir. 1996) ("A defendant's right to choice of counsel is limited 'not only by a demonstration of actual conflict, but by a showing of a serious potential conflict' even where a defendant expresses a desire to waive the potential conflict." (quoting *Wheat*, 486 U.S. at 164)); *United States v. Vasquez*, 995 F.2d 40, 42 (5th Cir. 1993) (explaining that "a district court is allowed substantial latitude in refusing waivers of conflicts of interest not only if an actual conflict is demonstrated, but in cases where a potential for conflict exists which may result in an actual conflict as the trial progresses" and that a district court "must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict" (internal quotation marks omitted)); *see also Lozano*, 158 F. App'x at 637 ("Lozano argues that for an actual conflict claim to prevail on appeal, one's lawyer must have been operating under an actual conflict which adversely affected his lawyer's performance. The Government properly points out that the actual and/or potential

conflicts of interest in this case only begin with the conflicts raised by prior representations and extend to almost every conceivable conflict of interest problem. .... In sum, the district court properly observed the potential pitfalls during the upcoming trial and the threats to the integrity of the judicial process inherent in Flores's and Berg's continued representation of Lozano in the case. The court did not abuse its discretion in disqualifying them.").

The United States Court of Appeals for the Fifth Circuit has "affirmed that a court may deny a request to associate co-counsel based on the serious potential for a conflict of interest" and has "affirmed [a] district court's decision to disqualify a defense attorney who had previously served as counsel for a government witness, citing the potential for divided loyalties." *Gharbi*, 510 F.3d at 554 (citations and internal quotation marks omitted); *see also Jackson*, 805 F.3d at 203-04 (citing *United States v. Millsaps*, 157 F.3d 989, 995-96 (5th Cir. 1998)).

The Fifth Circuit has "also held that the cross-examination of a current or former client can be a conflict of interest." *Jackson*, 805 F.3d at 203; *accord Sanchez Guerrero*, 546 F.3d at 334-35 ("Because the district court held that Womack would have a conflict of interest between attempting to discredit Witness or going easy on him to the detriment of Guerrero, it disqualified Womack as counsel. The district court's decision to disqualify Womack, in light of his joint representation of Guerrero and his brother as well as a cooperating witness, is in line with our precedent and was not an abuse of discretion."); *Vasquez*, 995 F.2d at 42 ("Although the value of Lore's assistance to the prosecution was disputed, defense counsel did not contest the facts that counsel

was representing Lore in another criminal proceeding and that Lore was cooperating with the Government in Vasquez's criminal case. The Government's contention that a conflict of interest would arise if Ramos was required to cross-examine Lore during the trial was a valid and significant concern. Because the Government demonstrated that there was a serious potential for a conflict of interest which could impair the effectiveness of counsel's representation, the district court did not abuse its discretion in disqualifying Vasquez's counsel."); *see also Lozano*, 158 F. App'x at 635-37. The Court of Appeals has explained that "[a]n attorney who cross-examines a former client inherently encounters divided loyalties," where, "[i]n these circumstances, counsel is placed in the equivocal position of having to cross-examine his own client as an adverse witness. His zeal in defense of his client the accused is thus counterpoised against solicitude for his client the witness." *Perillo v. Johnson*, 205 F.3d 775, 801-02 (5th Cir. 2000) (internal quotation marks omitted).

And the Fifth Circuit has affirmed the disqualification of an attorney who was attempting to represent three co-defendants, where one defendant was paying the attorney to represent the other two. *See United States v. Arledge*, 524 F. App'x 83, 87 (5th Cir. 2013) *(*"Arledge first selected Stephen Jones and Ryan Lurich to represent him. The district court disqualified Lurich because Lurich was simultaneously attempting to represent both Arledge, who essentially orchestrated this scheme, and two other defendants, who were lower level employees – and Arledge was paying Lurich to represent these two defendants. Accordingly, there were compelling reasons, including the potential for serious conflicts of interest, why the district court

disqualified Lurich from representing Arledge, and it was certainly not an abuse of discretion for the district court to do so."); *see also United States v. Izydore*, 167 F.3d 213, 220-21 (5th Cir. 1999).

Insofar as Cooper's Disqualification Motion invokes the Texas Rules of Professional Conduct, the Fifth Circuit has held that, "even though a defendant's right to counsel is not absolute and must yield to the higher interest of the effective administration of the courts, … acts which [sic] appear to violate the ABA Code or other accepted standards of legal ethics do not confer upon the trial court unfettered discretion to disqualify the attorney selected by the party." *United States v. Nolen*, 472 F.3d 362, 375 (5th Cir. 2006) (footnotes and internal quotation marks omitted). "An attorney representing a defendant in criminal proceedings may be disqualified for violating an applicable ethical rule only if, in light of the interests underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his choice." *Id.* (footnote and internal quotation marks omitted). "Conducting such a balancing is thus a prerequisite to disqualifying counsel of defendant's choice." *Id.*

<u>Withdrawal of Retained Defense Counsel</u>

As a general matter, "[a]n attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *In re Wynn*, 889 F.2d 644, 646 (5th Cir.1989). The withdrawing attorney bears the burden of specifying and proving the existence of good cause for withdrawal. *See United States v. Austin*, 812 F.3d 453, 456 (5th Cir. 2016) (citing *United States v. Wild*,

92 F.3d 304, 307 (5th Cir. 1996); *Wynn*, 889 F.3d at 646). A court's determination whether an attorney has good cause to withdraw depends on the facts and circumstances of the particular case. *See Wild*, 92 F.3d at 307 ("When filing a motion to withdraw, an attorney should provide a detailed explanation of the reasons why he believes that 'good cause' exists for him to withdraw as counsel. .... The trial court has the discretion to require specific reasons before granting such a motion."). "The withdrawal of an attorney in a given case is a matter entrusted to the sound discretion of the court." *United States v. Conlan*, 786 F.3d 380, 390 (5th Cir. 2015) (internal quotation marks omitted).

Unless there is a demonstrated conflict of interest, or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it results in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw. *See Wild*, 92 F.3d at 307. "If a district court is not persuaded that good cause for withdrawal exists, it has substantial latitude to deny an attorney's motion to withdraw." *White v. BAC Home Loans Servicing, LP*, No. 3:09-cv-2484-G, 2010 WL 2473833, at *1 (N.D. Tex. June 15, 2010) (citations omitted).

"Even where good cause for withdrawal exists, it is 'incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel.'" *Id.* at *3 (quoting *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. Jan. 1981)). "This requires the court to consider certain additional factors before allowing an attorney to withdraw. Those additional factors include: (1) the extent to which the attorney's withdrawal will delay or disrupt the case; (2) the length of time for which

-10-

the case and any dispositive motions have been pending; (3) the time it would take –
and the financial burden it would impose on – the client to find new counsel; (4) the
financial burden the attorney would suffer if not allowed to withdraw; (5) prejudice to
the other parties; and (6) whether withdrawal will harm the administration of justice."
*Id.* (citations omitted).

"Although an indigent defendant has a Sixth Amendment right to be represented
by counsel in his criminal proceedings, he is not entitled to demand a different
appointed counsel in the absence of showing good cause." *United States v. Contreras*,
558 F. App'x 400, 401 (5th Cir. 2014); *see also United States v. Young*, 482 F.2d 993,
995 (5th Cir. 1973) ("Although an indigent criminal defendant has a right to be
represented by counsel, he does not have a right to be represented by a particular
lawyer, or to demand a different appointed lawyer except for good cause. Unless a
Sixth Amendment violation is shown, whether to appoint a different lawyer for an
indigent criminal defendant who expresses dissatisfaction with his court-appointed
counsel is a matter committed to the sound discretion of the district court." (citation
omitted)); *cf.* 18 U.S.C. § 3006A(c) ("The United States magistrate judge or the court
may, in the interests of justice, substitute one appointed counsel for another at any
stage of the proceedings."). In the context of appointed counsel, the Court "is
constitutionally required to provide substitute counsel only if there is a substantial
conflict or problem affecting the ability to represent the defendant," that is, a showing
of conflict of interest, a complete breakdown in communication, or an irreconcilable
conflict. *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013).

And, even where a defendant requests to retain counsel to substitute for an appointed counsel, "[t]he freedom to have counsel of one's own choosing may not be used for purposes of delay," and "[l]ast minute requests are disfavored." *United States v. Silva*, 611 F.2d 78, 79 (5th Cir.1980); *accord Contreras*, 558 F. App'x at 401 ("Even if a defendant is seeking to substitute a retained counsel, the court must balance the right to counsel of one's choice against the need for fairness and the demands of the court's calendar." (citing *United States v. Jones*, 733 F.3d 574, 586-87 (5th Cir. 2013)).

In the context of retained counsel, the United States Supreme Court explained in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), that "[t]he Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence'"; that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him"; that "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds"; but that "the right to counsel of choice is circumscribed in several important respects." 548 U.S. at 144 (internal quotation marks omitted).

The *Gonzalez-Lopez* Court described the nature of a defendant's choice of retained counsel:

> The right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial. It has been regarded as the root meaning of the constitutional guarantee. Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or

> prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice – which is the right to a particular lawyer regardless of comparative effectiveness – with the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Id.* at 147-48 (citations and footnote omitted). The Supreme Court held that "erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error," where "[d]ifferent attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument." *Id.* at 148 (internal quotation marks omitted). "And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial." *Id.*; *accord Kaley v. United States*, 134 S. Ct. 1090, 1102-03 (2014) (describing the "vital interest at stake" in "the constitutional right to retain counsel of their own choosing," as described in *Gonzalez-Lopez*, 548 U.S. at 146-48, 150, and explaining that, for defendants, "having the ability to retain the counsel [they] believe[] to be best – and who might in fact be superior to any existing alternatives – matters profoundly" (internal quotation marks omitted)).

But, the Supreme Court made clear, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them," and "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings

-13-

that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them." *Gonzalez-Lopez*, 548 U.S. at 151. Accordingly, a defendant may not "insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation." *Id.* at 151-52. And, the Court continued,

> [w]e have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.

*Id.* at 152 (internal quotation marks and citations omitted).

Following *Gonzalez-Lopez*, in *United States v. Jones*, the Fifth Circuit explained in a case in which a defendant complained of the denial of her request, thirteen days before trial, to replace her appointed counsel with retained counsel of her choice, that "the district court was required to balance [the defendant's] right to counsel of choice against the needs of fairness and the demands of its calendar." 733 F.3d at 587. The Court of Appeals noted that "the constitutional right to an attorney of one's choice does not require a defendant to make a well informed decision" and that, if the defendant wanted a retained counsel of her choice to represent her, "that request should have been honored unless it was outweighed by the needs of fairness and the court's calendar." *Id.* "Therefore, the inquiry into [the defendant's] motivation for her request for a different attorney is more appropriately analyzed as part of the needs of fairness inquiry." *Id.*

As to "the needs of fairness," the Fifth Circuit concluded that "there are several reasons why the needs of fairness cut against allowing a substitution in this case. First, the district court found that allowing [retained counsel] to substitute in as counsel would have required a continuance, and the government articulated specific ways it would be prejudiced by such a continuance"; "[s]econd, the district court asked [the defendant] why she was dissatisfied with [the appointed counsel's] representation and determined that her concerns about [the appointed counsel] were suppositional and not based on anything of a factual nature"; "[t]hird, considering the protracted nature of the [] case, [the defendant] waited until late in the case to request the substitution"; and "[f]ourth, the district court was concerned that a continuance could compromise the availability of a key witness [] who had been in and out of the hospital." *Id.* at 587-88 (citations and internal quotation marks omitted). "After considering the circumstances surrounding [the defendant's] motion to substitute, [the Court of Appeals found] that the needs of fairness cut against allowing a substitution." *Id.* at 588.

The Fifth Circuit further explained that, "[a]t the substitution hearing, the district court explained that it was persuaded that a substitution of counsel would necessitate a continuance due to the vast quantity of material a new attorney would need to review. Furthermore, the Court explained that it would be several months before it could try the case if it were continued." *Id.* The Court of Appeals explained that an "anticipated several month delay in this case is distinguishable from the 'month or so' delay contemplated" in a decision on which the defendant relied. *Id.* at

-15-

589. The Fifth Circuit stated that it "will refrain from critiquing the needs of the district court's calendar with the benefit of hindsight"; that, "[a]t the time the district court was evaluating the motions to substitute, it determined that the substitution would require a several month continuance"; and that, "[t]hus, the demands of the court's calendar weighed heavily against granting the substitution." *Id.*

The Court of Appeals held that the defendant "had a constitutional interest in the counsel of her choice, which the district court was required to balance against the needs of fairness and its schedule," and that "[w]e agree with the district court that the balance of factors weighed against granting the substitution in this case." *Id.*

But, here, "unlike the defendant in *Gonzalez-Lopez*, [where Cesario seeks] to have his retained counsel removed from the case and [is] not seeking to be represented by any particular retained attorney," it is not clear under Fifth Circuit law that *Gonzalez-Lopez* is applicable to this case. *See United States v. Thomas*, No. 08-30372, 2008 WL 5069709, at *1 (5th Cir. Dec. 2, 2008) (concluding, under similar circumstances where the defendant "merely contends that he was entitled to new appointed counsel because he was dissatisfied with the services of retained counsel," that "*Gonzalez-Lopez* is not applicable to the instant case"). That is, the Fifth Circuit apparently has not addressed, in any (non-vacated) published opinion, *Gonzalez-Lopez* in the context of the issue of whether a defendant, without a showing of good cause, "may discharge his retained counsel without regard to whether he will later request appointed counsel." *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1271 (11th Cir. 2016) (citing and discussing *United States v. Brown*, 785 F.3d 1337 (9th Cir. 2015)); *but*

-16-

*see United States v. Mason*, 668 F.3d 203, 212-15 (5th Cir.) (holding, based on *Gonzalez-Lopez*, "that, pursuant to the Sixth Amendment right to choice of counsel, a criminal defendant is not required to show good cause to substitute appointed for retained counsel, provided of course that he can establish financial eligibility," but "recogniz[ing] that the Sixth Amendment right to choice of counsel is qualified, not absolute," where "[t]he Supreme Court has held that a defendant may not insist on representation by a non-attorney or an attorney disqualified by a conflict of interest, and that a trial court may balance the right to choice of counsel against the needs of fairness and the demands of its calendar"), *opinion withdrawn and superseded*, 480 F. App'x 329 (5th Cir. 2012).

The United States Court of Appeals for the Eleventh Circuit – following *Gonzalez-Lopez*, Fifth Circuit case law that is also binding in that jurisdiction, or Eleventh Circuit case law that itself ultimately follows Fifth Circuit case law – has provided the following analysis on this question:

> Under the Sixth Amendment, a defendant who does not require appointed counsel enjoys both the right to effective assistance of counsel and the right to choose who will represent him. The right to select counsel of one's choice ... has been regarded as the root meaning of the constitutional guarantee. A defendant may substitute a retained or appointed counsel with retained counsel regardless of the quality of the representation he received. The right to counsel of choice is not absolute but must bend before countervailing interests involving effective administration of the courts. A court must permit substitution if it does not interfere with the fair, orderly and effective administration of the courts. The denial of the right to counsel of choice is structural error.
> An indigent criminal defendant who seeks appointed counsel does not have a right to have a particular lawyer represent him nor to demand a different appointed lawyer except for good cause. Good cause exists where there is a fundamental problem, such as a conflict of interest, a

-17-

complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. The exception for good cause protects the right to effective assistance of counsel; if good cause exists, a defendant no longer has effective representation.

This appeal requires that we decide which standard applies when a defendant moves to replace retained counsel with appointed counsel. And the order of that sequence supplies the answer. The right to choose counsel is incomplete if it does not include the right to discharge counsel that one no longer chooses.

A defendant exercises the right to counsel of choice when he moves to dismiss retained counsel, regardless of the type of counsel he wishes to engage afterward. To be sure, when an indigent defendant has exercised the right to dispense with a retained lawyer, the right to effective representation – a right derived ... from the purpose of ensuring a fair trial – might require that appointed counsel take his place. But that distinct right does not alter the right under the Sixth Amendment to hire and fire retained counsel. Because a defendant who moves to dismiss his retained counsel maintains the right to counsel of choice, a district court cannot require the defendant to show good cause.

We agree with those courts that have held that a defendant may discharge his retained counsel without regard to whether he will later request appointed counsel. In *United States v. Brown*, 785 F.3d 1337 (9th Cir. 2015), the Ninth Circuit stated that when a defendant wishes to discharge retained counsel and substitute appointed counsel, the right to counsel of one's choice is implicate[d]. Even though the defendant was not entitled to, or seeking, counsel of choice, the Sixth Amendment right to counsel of choice means that a defendant has a right to fire his retained ... lawyer ... for any reason or [for] no reason. Accordingly, the Ninth Circuit concluded that a defendant with retained counsel seeking to substitute appointed counsel has a Sixth Amendment right to discharge his retained counsel. It held that a district court should grant a defendant's motion to discharge a retained counsel unless denying the motion is compelled by purposes inherent in the fair, efficient and orderly administration of justice. The Court of Criminal Appeals of Oklahoma and the Supreme Court of California have also held that a defendant who seeks to discharge retained counsel and have the court appoint counsel may do so unless the substitution would delay court proceedings, prejudice the parties, or disrupt the orderly process of justice. Several state intermediate courts have adopted similar approaches.

We reject the view of the First Circuit, which applied the standard of good cause in this circumstance. In *United States v. Mota-Santana*, 391 F.3d 42 (1st Cir. 2004), the First Circuit explained that a district court had taken two actions when it refused to allow the retained counsel to

-18-

withdraw and it refused to appoint substitute counsel. Were the only issue that of the appropriateness of the court's refusal to permit withdrawal, the First Circuit reasoned, there might be some question because a defendant is not ordinarily dependent on the court's permission to replace retained counsel. But here, the court concluded, the two actions merge. The opinion of the First Circuit offers no additional reasoning and we are not persuaded that the only relevant action is the second request to engage new counsel or that the motion to dismiss retained counsel no longer implicates the right to counsel of choice. This decision conflates the two rights at issue, contrary to the later explanation by the Supreme Court of the United States in *Gonzalez-Lopez* that the rights are distinct.

To be sure, a district court reviewing a motion to dismiss counsel must know how the defendant wishes to proceed so that the defendant will not be left without representation in violation of the Sixth Amendment. The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel. So, before granting a motion to dismiss retained counsel, a district court must determine that the criminal defendant either will be represented by counsel or has made a knowing and voluntary waiver of the right to counsel. If a defendant intends to move the court to appoint counsel, the court should determine whether the defendant is eligible for appointed counsel.

Even when a district court is assured that a defendant will have representation or has waived the assistance of counsel, a court may still deny a motion to substitute retained counsel if it will interfere with the fair, orderly, and effective administration of the courts. For example, a defendant may not substitute counsel to delay court proceedings. Under this standard, a court reviewing a motion to dismiss retained counsel by a defendant who intends to request appointed counsel can prevent potential manipulation.

*Jimenez-Antunez*, 820 F.3d at 1270-72 (citations and internal quotation marks omitted).

But, in a published decision issued a few months before this Eleventh Circuit decision, the Fifth Circuit held – without citing or addressing *Gonzalez-Lopez* – that, where a defendant sought to have his retained counsel withdrawn and to have counsel appointed, "the district court was not required to make a financial inquiry under the

-19-

[Criminal Justice Act] and the court did not abuse its discretion in finding good cause did not exist for appointment of new counsel." *Austin*, 812 F.3d at 454. The Court explained the background of that appeal:

> Stokley Austin retained Alden Netterville as his attorney after a grand jury indicted him on numerous gun and drug charges. Netterville represented Austin throughout the pretrial stage of the proceedings. Eventually, after three attempts at a plea, Austin pled guilty to all charges without a plea agreement on September 22, 2014.
>
> On December 19, 2014, Austin wrote to the district court expressing his "concern and discontent concerning my representation." Austin said that Netterville "failed to file any pre-trial motions on my behalf in preparation for my defense." Also, Austin "never received any discovery regarding the 18 U.S.C. 924(c) count in the indictment[,]" and the information Austin "received relating to the conspiracy count was extremely limited." Finally, Austin explained that he was "asking the court to appoint new counsel as [he] has exhausted all of [his] resources."
>
> This letter prompted Netterville to file a motion to withdraw stating: "allegations contained in [Austin's] letter ... make further representation by [him] untenable." The district court issued an order that denied Netterville's motion to withdraw explaining "discontent with counsel does not warrant withdrawal." The order did not address Austin's request for appointed counsel.
>
> The district court then proceeded to hold a sentencing hearing. At the hearing, the court again addressed Netterville's earlier motion to withdraw. The court stated that it denied the motion "[b]ecause I did not see a basis for what I would assume [was] any attempt by [Austin] to either withdraw his guilty plea or to try to change anything regarding that plea." Furthermore, the court said: "I already got your letter. Your letter has no basis to have him withdraw. I've already made that decision. If I understand your objections, they're rather general." The court then sentenced Austin within the guidelines and pursuant to statutory minimums to a total of 300 months, followed by a ten-year term of supervised release.
>
> After imposing its sentence, the district court granted a second motion to withdraw made by Netterville. It then told Austin that he had a right to appeal, and also had a right to appointed counsel on appeal. Austin timely filed a notice of appeal, did not file a motion seeking appointment of counsel, and did not file a motion to proceed in forma pauperis. Instead, he paid the appellate filing fee in full and retained counsel.

*Id.* at 454-55 (footnotes omitted).

On appeal, "Austin argue[d] that the district court erred in failing to inquire into his financial eligibility for appointed counsel under the [Criminal Justice Act], and the court erred in denying counsel's motion to withdraw because good cause existed." *Id.* at 455. The Court of Appeals held that "Austin had already retained counsel and therefore could not allege that he lacked the funds to obtain a lawyer"; that "Austin does not state in his letter that he either owed money to Netterville or that he could not pay Netterville any sum that was owed"; and that, "[a]ccordingly, Austin did not show that he was qualified for counsel pursuant to the [Criminal Justice Act]." *Id.* at 456.

The Fifth Circuit panel also held that, although "Austin also argues that the district court erred in refusing to allow him to substitute counsel," "a defendant does not have an absolute right to the counsel of his choice"; "[i]nstead, good cause must exist for the withdrawal of counsel." *Id.* (footnotes omitted; citing *United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992) ("The Sixth Amendment requires only that a defendant be given a fair or reasonable opportunity to obtain particular counsel; it does not guarantee an absolute right to the counsel of one's choice."); *Wild*, 92 F.3d at 307 ("When filing a motion to withdraw, an attorney should provide a detailed explanation of the reasons why he believes that 'good cause' exists for him to withdraw as counsel."); *Wynn*, 889 F.2d at 646 ("An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client."). The Court of Appeals held that

-21-

Austin made no showing that the district court abused its discretion by denying Netterville's motion to withdraw. Austin did not show why the facts justified counsel filing a pre-trial motion or any specific information that he expected counsel to provide him for review. Moreover, Austin does not articulate any conflict of interest which Netterville might have possessed. The district court was in the best position to evaluate counsel's performance and rejected Austin's argument. Thus, there is no basis for us to determine that the district court abused its discretion in denying Austin's motion to replace his counsel.

*Id.*

The Fifth Circuit in *Austin* appears to conclude that, where a defendant seeks to have his retained counsel withdrawn and have substitute counsel appointed to replace his counsel of his choice, good cause must be shown for the withdrawal and substitution. This, like the earlier unpublished decision in *Thomas*, 2008 WL 5069709, stands in contrast to the Fifth Circuit's earlier holding in *Jones*, based on *Gonzalez-Lopez*, that, where a defendant seeks to have appointed counsel replaced with retained counsel of his choice, even if a district court does "not share [the defendant's] concerns about [her appointed counsel], the constitutional right to an attorney of one's choice does not require a defendant to make a well informed decision" and that, where a defendant wants retained counsel to represent her, "that request should [be] honored unless it [is] outweighed by the needs of fairness and the court's calendar." 733 F.3d at 587.

In the specific context of a motion to withdraw based on a conflict of interest, the Fifth Circuit has set forth a three-part inquiry to govern a court's decision:

We first decide whether or not an actual conflict of interest existed. *See United States v. Rico*, 51 F.3d 495, 508 (5th Cir. 1995). If one did, we then determine whether or not the defendant knowingly, intelligently and

voluntarily waived it. *See id.* If a valid waiver occurred, we finally consider whether or not the district judge should have accepted it, for a valid waiver must be rejected if allowing representation to continue undermines the judicial system's integrity.

*United States v. Medina*, 161 F.3d 867, 870 (5th Cir. 1998) (footnote omitted); *see also*

*United States v. Garza*, 429 F.3d 165, 171-73 (5th Cir. 2005).

As to Defendant's request for appointment of substitute counsel, the Criminal

Justice Act, 18 U.S.C. § 3006A (the "CJA"), requires the Court to appoint counsel to

represent a defendant who is financially unable to obtain counsel but also requires the

Court to make an appropriate inquiry into a defendant's financial status to determine

whether the defendant is entitled to appointed counsel. *See United States v. Mason*,

480 F. App'x 329, 335 (5th Cir. 2012). "The burden rests with the defendant" – who,

here, has been represented by retained counsel for several months – "to establish

insufficient financial means to employ counsel." *United States v. Foster*, 867 F.2d 838,

841 (5th Cir. 1989) (footnote omitted). The CJA provides, in relevant part, that, "[i]f at

any stage of the proceedings ... the court finds that the [defendant] is financially unable

to pay counsel whom he had retained, it may appoint counsel ... as the interests of

justice may dictate." 18 U.S.C. § 3006A(c); *see also Foster*, 867 F.2d at 841 (explaining

that the CJA "requires that a court appoint counsel to represent a defendant who has

not waived his right to counsel and who is financially unable to obtain counsel").

### The Parties' Positions and Allegations

The Disqualification Motion

Cooper reports that "[i]t has come to the attention of this Defendant that a

-23-

potential serious and irreparable conflict of interest may have arisen with Cesario's counsel, William C. McMurrey and Derek R. Staub based on their prior representation of John Cooper," and, "[b]ased upon this concern, Defendant Cooper respectfully requests this Court to disqualify William C. McMurrey and Derek R. Staub from further representation of Defendant Cesario." Dkt. No. 56 at 1. Cooper explains that, "[i]t appears that an actual, serious, and irreparable conflict of interest exists between counsel for Defendant Cesario and Defendant Cooper," where, "[p]rior to being indicted, counsel for Defendant Cesario, William C. McMurrey and Derek R. Staub represented both Mr. Cesario and Mr. Cooper in their joint business venture, CCMGRX," and "Mr. McMurrey and Mr. Staub were retained by Cesario and Cooper and an attorney-client relationship was established." *Id.* at 3.

Cooper contends that, in Cesario's Motion for Revocation of Pretrial Detention Order seeking review of the March 1, 2016 Detention Order [Dkt. No. 52], "Cesario, by and through his counsel, attempts to draw a comparison between Cesario and Cooper directly to the detriment of Cooper, their former client" and that "[t]his argument appears to utilize otherwise confidential information passed by Cooper to his then attorneys in a manner adverse to Mr. Cooper's current interests." *Id.* at 4-5; *see also id.* at 5 ("Defendant Cesario's most recent pleadings bring to light a potential conflict of interest that has arisen between his current counsel, William C. McMurrey and Derek R. Staub and their former client and current co-defendant John Paul Cooper. It appears that counsel for Cesario may have already utilized information received during their representation of Cooper to Cooper's detriment and it is probable that their

-24-

continued representation of Cesario will result in further improper disclosures.").

According to Cooper, "[r]egardless of whether this specific argument is based upon otherwise privileged material, the appearance as such brings to light the concern of Cooper that Cesario's counsel might utilize information that was obtained during their representation of Cooper in their current representation of Cesario," and, "[b]y asserting this type of argument this early in the proceedings, it is evident that continuing representation of Mr. Cesario by his current counsel will 'in reasonable probability' result in either 'unauthorized disclosure of confidential information under [Texas Rule of Professional Conduct] 1.05(b)(1) or an improper use of such information to the disadvantage of the former client under [Texas Rule of Professional Conduct] 1.05(b)(3)' and would therefore be improper under the Texas Rules of Professional Conduct." *Id.* at 5. Cooper asserts that, "[b]ecause this potential conflict exists, and because is cannot be eliminated or waived, this court has the discretion to disqualify counsel" where "[c]ounsel for Cesario has been placed in a situation adverse to the position of their former client and this conflict has not, nor will it be waived." *Id.*

Cooper "respectfully requests this Honorable Court to grant this Motion and to sign an Order disqualifying William McMurrey, Derek R. Staub, and any other lawyer employed by or associated with their law firm to participate in the representation of Richard Cesario in this case, or in the alternative, to conduct a hearing to determine whether a conflict of interest does indeed exist." *Id.* at 5-6.

For its part, in the Opposition to Motion for Revocation of Detention Order, the government explained in a footnote that it "is compelled to notify the Court of a

potential conflict of interest with Cesario's counsel, William C. McMurrey and Derek R. Staub"; that "[t]he government understands that John Paul Cooper intends to file a motion to disqualify Messers. McMurrey and Staub as they used to represent Cooper and have now made arguments that are adverse to him"; that, "[o]n page seven of Cesario's motion to revoke, Cesario's counsel attempts to draw a comparison between Cesario and Cooper," where "Cesario's counsel suggests that Cesario is less of a flight risk than Cooper because he traveled to Costa Rica fewer times than Cooper, and seems to suggest that Cooper owns two condos in Costa Rica while Cesario does not actually own one at all"; and that "[t]he government respectfully requests that the Court address this potential conflict at or prior to the September 9, 2016, hearing on this motion." Dkt. No. 55 at 7 n.2.

<u>The Withdrawal Motion</u>

Although Cesario and his retained counsel "strongly disagree with Cooper's" Disqualification Motion, *see* Dkt. No. 62; Dkt. No. 68 at 1, Cesario seeks to have his retained counsel withdraw and new counsel appointed because he believes that he has "no choice but to request that McMurrey and Staub withdraw from representing me in my criminal matter" and has "direct knowledge that my punishment may be affected by the counsel of my choice." Dkt. No. 68-1 at 2. This stems from the following exchanges, as recounted by Cesario:

> Cooper admitted to me in the hold over cell that he did not know about the Motion to Disqualify, was unaware of any conflict, or knowledge of a Hearing because he had not seen his attorney in months. Cooper also stated that he didn't believe there was a conflict and had no issue with McMurrey and Staub representing me individually.

> The next time Cooper and I met in the hold over cell before the
> September 27, 2016 Hearing, Cooper told me that his attorney informed
> him that the prosecutor hates McMurrey and that I would be better off
> with a court appointed attorney because I will never get a fair plea
> negotiated deal with the prosecutor as long as McMurrey is my attorney.

*Id.* at 1-2. Cesario's retained counsel reports that they "now have an actual conflict of

interest in the above-styled case with their client and can no longer adequately

represent Defendant Cesario because of the stated bias and prejudice toward" Cesario's

retained counsel." Dkt. No. 68 at 2.

The Withdrawal Motion further represents that "Cesario is unable to afford new

counsel and requests this Court to appoint new counsel." *Id.* And Cesario attests that

he "cannot afford to retain my own counsel." Dkt. No. 68-1 at 2.

The government does not oppose the Withdrawal Motion but reports in its

response that it "believes that Mr. McMurrey's and Mr. Staub's withdrawal is

appropriate and necessary in this case due to the unwaivable conflict of interest caused

by their prior representation of Cesario and his codefendant John Cooper, as set forth

in Cooper's" Disqualification Motion and because, "even if that conflict could be waived

by Cooper, the Rules of Professional Conduct would require Mr. McMurrey and Mr.

Staub to continue to keep information they learned from Cooper confidential," which

"duty to Cooper would, in turn, impede Mr. McMurrey's and Mr. Staub's ability to

provide Cesario a full defense, as they would be unable to use any such information on

Cesario's behalf." Dkt. No. 69 at 1, 2.

The government explains that, "[f]or these reasons, and these reasons alone, Mr.

McMurrey and Mr. Staub should be permitted to withdraw" and that it "does not agree

with, and specifically denies that there is any personal animosity between the undersigned and Mr. McMurrey that would prevent Cesario from receiving a fair trial and/or plea agreement." *Id.* at 2 & n.1.

## Analysis

Every case presents its own facts and circumstances, bearing out the truism that every case is different. But these motions present an unusual set of circumstances in which every party and attorney in this case – the government, Cooper, Cooper's appointed counsel, Cesario, and Cesario's retained counsel – now agrees that Cesario should no longer be represented by his retained counsel going forward in this case, but for different reasons.

To determine whether the Court should order the actions requested by this consensus of sorts, the Court need decide no more than necessary. Cesario no longer wants to be represented by his retained counsel because he believes that he will fare better going forward opposite the government with a different, appointed counsel. Regardless of whether he is right or not in his assessment or as to the truth of the factual premises underlying it (which the Court need not – and does not – find), the Court now need not determine whether there is an actual conflict of interest or even a serious potential for (or risk of) a conflict of interest. That is because the Court determines, in an exercise of its sound discretion, that – based on the standards set forth above as applied to the unusual factual circumstances presented here, in which Cesario attests under oath to his concern (whether justified or not) about the effect that continuing with his retained counsel of choice may have on the outcome of his case –

Cesario should be permitted to discharge his retained counsel and have counsel appointed to substitute as attorney of record. The Court further finds that the balance of relevant factors does not weigh against granting the withdrawal of Cesario's retained counsel and then permitting Cesario to seek appointment of counsel.

Accordingly, the Court grants Mr. McMurrey and Mr. Staub's request for leave to withdraw and ORDERS that William "Bill" McMurrey and Derek R. Staub of the law firm of Lackey Hershman LLP are granted leave to withdraw as counsel for Defendant Richard Robert Cesario and are discharged from any further responsibilities in this case.

The Court further finds that Defendant Richard Robert Cesario is entitled to appointed counsel to represent him in this case going forward. The Court finds that Defendant, through his testimony in his affidavit [Dkt. No. 68-1] and at the September 27, 2016 hearing, has made a sufficient showing that he is financially unable to further pay counsel who had been retained (and have now been permitted to withdraw) and is financially unable to obtain other counsel to represent him and that appointment of counsel for Cesario is in the interests of justice.

Accordingly, the Court appoints the following attorney, pursuant to 18 U.S.C. § 3006A, to represent Defendant Richard Robert Cesario going forward:

Kevin B. Ross
Law Office of Kevin B. Ross, P.C.
8150 North Central Expressway, Suite 601
Dallas, Texas 75206
214/731-3151
214-594-8988 (fax)
kbr@rosscrimlaw.com

-29-

The Clerk of the Court is directed to serve a copy of this order on Mr. Ross by email and first-class mail.

## Conclusion

For the reasons explained above, the Court GRANTS the Unopposed Motion to Withdraw as Counsel of Record and Appoint Defendant New Counsel for Defendant Richard Cesario [Dkt. No. 68] and DENIES as moot the Motion to Disqualify Counsel for Defendant Richard Cesario [Dkt. No. 56].

SO ORDERED.

DATED: October 4, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE