IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | |
| | § | No. 3:16-cr-60-M (2) |
| JOHN PAUL COOPER, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

**Background**

Defendant John Paul Cooper is charged with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349; Payment of Illegal Kickbacks and Aiding and Abetting Payment of Illegal Kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2; Receipt of Illegal Kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1); and Payment of Illegal Kickbacks and Aiding and Abetting Payment of Illegal Kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2 in a second superseding indictment filed in this district. *See* Dkt. No. 289.

On his arrest on the original indictment, Cooper had his initial appearance on February 23, 2016. *See* Dkt. No. 12. After a detention hearing on March 1, 2016, the undersigned granted the government's motion for detention and ordered Cooper detained pending trial. *See* Dkt. Nos. 27 & 28. The undersigned explained at the conclusion of the hearing that

> I've carefully considered all of the evidence and the argument of counsel today. Let me first take up the matter of United States of America of

-1-

versus John Paul Cooper. Mr. Cooper is charged with multiple counts in a 14-count indictment. The Government has moved for pretrial detention, asserting that this case involves a serious risk that Mr. Cooper will flee and a serious risk that he may obstruct justice and asserts there's no condition or combination of conditions that could reasonably – that could be set to reasonably assure his appearance as required or the safety of any other person and the community.

As counsel's arguments already indicated, the Government's burden here is to show by a preponderance of the evidence that there is no combination of conditions that the Court could set to reasonably assure Mr. Cooper's appearance as required if he were released, or by clear and convincing evidence that there's no combination of conditions that could reasonably assure the safety of any other person or the community if he were to be released.

I have, as I indicated, carefully considered the case agent's testimony as well as the other witnesses' testimony and the report of Pretrial Services, and all in light of the factors that Congress has directed the Court to consider as part of the Bail Reform Act, including Mr. Cooper's history and characteristics, the apparent weight of the evidence against him, the nature and circumstance of the offense charged, and other matters.

Here, the evidence shows that witnesses told investigators that Mr. Cooper had stated an intent that he may flee if things were to go south, to flee to Costa Rica, and might do harm to anyone who turned on him and Mr. Cesario. The evidence also shows, through including Government's Exhibit No. 1, a text conversation Mr. Cooper had with his fiancée the night before what turned out to be his arrest, after there's evidence that seizure of a bank account had come to Mr. Cooper's attention, in which he's working at transferring money in advance of possible prosecution, it would seem, and of substantial assets not yet seized and not yet accounted for, including some amount of monies offshore. There's also further evidence through the testimony of the case agent of Mr. Cooper having substantial assets not yet seized or accounted for.

The evidence also clearly shows that Mr. Cooper has a home and vehicle and assets in Costa Rica, and is now indicted and faces a possible substantial prison term.

I have considered all the other evidence, of course, too, including Mr. Cooper's ties to the community and his family here and his life with them, and have considered possible conditions that could be set, including third-party custodians who have been proffered and the possibility of anything, including electronic monitoring, even house arrest.

However, considering all the circumstances and all the evidence

here today, I do find that the Government has met its burden by a preponderance of the evidence to show and convince the Court that there is no combination of conditions I could set to reasonably assure Mr. Cooper's appearance as required in light of the particular evidence here. And for that reason, the Government's motion for detention will be granted. A written order will follow.

Dkt. No. 54 at 161-63. And, in the Detention Order, the undersigned explained that

[t]he Court has considered the testimony of the case agent and Defendant's sister and ex-wife and the report of the pretrial services officer, all in light of the factors listed in 18 U.S.C. § 3142(g) – including the nature and circumstances of the offense charged and Defendant's history and characteristics.

For the reasons stated on the record at the hearing, the Court finds, by a preponderance of the evidence, that there is no condition or combination of conditions that will reasonably assure Defendant's appearance as required.

The evidence shows that witnesses told investigators that Defendant and his co-defendant Richard Robert Cesario stated an intent to do possible harm to any associates or employees who turned on them and to flee to Costa Rica if prosecuted. Defendant has a home and vehicle and assets in Costa Rica, and the case agent testified that Defendant has substantial assets that have not yet been seized or accounted for. The evidence also shows that Defendant engaged in a text message conversation with his fiancé the night before his eventual arrest in which he discussed millions of dollars held off-shore and coordinated the transfer of moneys in advance of possible prosecution or seizure by the government. Defendant is now indicted and faces a possibly substantial prison term if convicted.

Based on the facts explained above, and the Court's findings based on those facts, the Court finds that there is no condition or combination of conditions that could be set to reasonably assure Defendant's appearance if Defendant were released. Accordingly, the Government's motion for detention is GRANTED.

Dkt. No. 28 at 2-3.

Cooper filed a Motion to Revoke or Amend Magistrate's Order of Pretrial Detention [Dkt. No. 194] on December 14, 2016. On January 26, 2017, Chief Judge Barbara M. G. Lynn denied that motion without a hearing, explaining that

Rule 59(a) of the Federal Rules of Criminal Procedure establishes a fourteen day deadline for a defendant to seek review of a magistrate judge's detention order. See Fed. R. Crim. P. 59(a). If the defendant fails to appeal the magistrate judge's decision within fourteen days, the right to review is waived. *Id.*; *see also United States v. Watts*, 2010 WL 11452009, at *1 (N.D. Tex. Jun. 25, 2010) (citing *United States v. Hoffman*, 2009 WL 1068856, at *1 (W.D. Ark. Apr. 21, 2009) and *United States v. Tooze*, 236 F.R.D. 442, 446 (D. Ariz. 2006)). Any review by the district court following such a waiver is discretionary and not a matter of right. *Watts*, 2010 WL 11452009, at *1. Defendants Cesario and Cooper filed their Motions well after the deadline prescribed by Rule 59(a). Magistrate Judge Horan entered the detention orders as to these two Defendants on March 1, 2016; yet, Cesario did not file his initial Motion until August 26, 2016, and Cooper did not file his Motion until December 14, 2016. The Court therefore finds that Cesario's two Motions and Cooper's Motion are untimely, and it declines to exercise its discretion to review the magistrate judge's detention orders for these two Defendants.

Alternatively, as to Defendants Cesario and Cooper, and as to Defendants Baumiller and Fuller, the Court may reopen a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Having reviewed the parties' Motions and responses, the Court finds that none of the moving parties has shown that any information exists that was not known at the time of their detention hearing and that has a material bearing on whether there are conditions of release that will reasonably assure (1) the appearance of any of the four Defendants who has filed, or is the subject of, a motion to revoke a detention order, as required, and (2) the safety of any other person and the community. With regard to the government's Motion to Reopen the Detention Hearing and to Revoke Pretrial Release of Defendants Fuller and Baumiller, the Court determines that none of the "three additional pieces of information" that have allegedly come to light since December 6, 2016, the date Judge Godbey entered the Order Setting Conditions of Release, warrant reopening the detention hearing. Defendants Fuller and Baumiller, as to whom the December 6 Order applied, could not satisfy the terms of the Order within a reasonable time and, consequently, will not be released.

Finally, the Court is not persuaded that any perceived inequity among the Defendants based on their different financial resources warrants reopening any detention hearing, especially because the Court

-4-

> is not going to allow the release of any of the four Defendants.
>
> The pending Motions pertaining to the custodial status of Defendants Cesario and Cooper [ECF #52, #194, and #204] are DENIED.

Dkt. No. 211 at 1-3 (footnote omitted). (Judge Lynn explained that, "[i]n November 2016, due to an unavoidable and irreconcilable conflict with the Court's schedule, Judge Godbey held a hearing on the joint Motion to Revoke Detention Order and Release Defendants on Conditions of Pretrial Release, filed by Defendants Fuller and Baumiller. Judge Godbey made certain findings, and following the hearing, entered an Order Setting Conditions of Release, which has the same effect as if the Order was entered by this Court. The Court is familiar with the record and interprets the Order signed by Judge Godbey as if it had entered the same Order itself." *Id.* at 2 n.1.)

On a February 28, 2018 conference call with counsel, Judge Lynn commented – after noting that issues with discovery were leading to a continuance of the expected one-month-long trial to most likely January 2019 – that

> the only thing I can say about this discovery is I'm particularly concerned about people that are sitting in custody who have not been convicted of anything and are presumed to be innocent and they are caught in a difficult position of wanting to get out of custody and be acquitted, which may or may not happen, but they also can't afford to go to trial without their lawyers being prepared because that makes it more likely that they will be convicted as opposed to being acquitted.
>
> But the Government has to do 150 percent to get this produced ASAP. I mean, I don't know how much clearer I can be in saying it. I am sympathetic to document production in complex cases. ....
>
> [] I am not trying to make more work for myself or the magistrate judge. But I am not happy about a person being in custody for more than two years without getting a trial. And there if persons who are in that circumstance – because I am hearing from the call that we can't go to trial for nearly a year from now, and if there are people in custody who think that that fact should cause a reconsideration of the custody determination, then you may file such a motion.

Dkt. No. 348 at 11-15.

Cooper then filed his Second Motion to Revoke or Amend Magistrate's Order of Pretrial Detention on March 5, 2018. *See* Dkt. No. 342 (the "Motion to Revoke"). Judge Lynn has referred this motion to the undersigned United States magistrate judge under 28 U.S.C. § 636(b)(1). *See* Dkt. No. 344.

In the Motion to Revoke, Cooper explains that, pursuant to 18 U.S.C. § 3145(b), he

> moves this District Court to conduct a de novo review of the facts in this case relating to the Magistrate's order of March 1, 2016 [Doc. 28], and revoke this order of Detention. By virtue of this order, Mr. Cooper is currently detained awaiting the resolution of the above styled and numbered criminal case. Mr. Cooper moves this Court to release him subject to conditions of release during the pendency of the above styled and numbered criminal case. Mr. Cooper would request oral argument to aid in the determination of this motion. In support of this motion, Mr. Cooper would respectfully show unto the Court as follows.
> ....
> Mr. Cooper was originally charged by Indictment filed on February 18, 2016. [Dkt. 3]. On March 1, 2016 a hearing was held on the Government's motion for detention. After hearing the evidence presented and the arguments of counsel, United States Magistrate Judge David Horan found that the government had met their burden of proof establishing Mr. Cooper as a flight risk and further found that "there is no condition or combination of conditions that could be set to reasonable assure Defendant's appearance if Defendant were released." [Dkt. 28 at 3]. Judge Horan subsequently signed an order to this effect and remanded Mr. Cooper into the custody of the United States Marshalls pending further proceedings.
> The basis for Judge Horan's finding rested significantly on the following relevant facts, as stated within Judge Horan's Detention Order.
> > The evidence shows that witnesses told investigators that Defendant and his co-defendant Richard Robert Cesario stated an intent to do possible harm to any associates or employees who turned on them and to flee to Costa Rica if prosecuted. Defendant has a home and vehicle and assets in Costa Rica, and the case agent testified that

Defendant has substantial assets that have not yet been seized or accounted for. The evidence also shows that Defendant engaged in a text message conversation with his fiancé the night before his eventual arrest in which he discussed millions of dollars held off-shore and coordinated the transfer of moneys in advance of possible prosecution or seizure by the government. Defendant is now indicted and faces a possibly substantial prison term if convicted.

Based on the facts explained above, and the Court's findings based on those facts, the Court finds that there is no condition or combination of conditions that could be set to reasonably assure Defendant's appearance if Defendant were released. Accordingly, the Government's motion for detention is GRANTED.

Dkt. 28 at 2-3. Mr. Cooper remains in the custody of the United States Marshals.

Since the time of this detention hearing, numerous other defendants have been added to the case and numerous Superseding Indictments have been filed. Discovery in this case has exceptionally complex and arduous, and the addition of more defendants to the Indictment has caused trial in this matter to be delayed multiple times.

It has become readily apparent, through both a conference call with the Honorable Judge Barbara Lynn, as well as through subsequent email correspondence between both defense counsels, as well as the Government, that trial in this matter will not proceed until at least late January of 2019.

Discovery in this case is not yet complete. While it is our understanding that the Government continues to work diligently to produce full discovery to all defendants in this case, it was revealed in the conference call with Judge Lynn on Wednesday, February 28, 2017 that the Government does not have an estimated timeframe for when discovery will be complete. Therefore, even the trial setting of late January next year is, at best, a guess subject to moving further.

As of the filing of this motion, Mr. Cooper has been incarcerated for over two years even though he is constitutionally afforded a presumption of innocence. Based on the newly learned information, his incarceration will span more than three years before getting the opportunity to try this case before a jury.

....

Pursuant to 18 U.S.C. § 3145(b), this Court retains the authority to review a Magistrate's order detaining a defendant in a federal criminal case. Specifically, the Court has the obligation to review pretrial detention to ensure that a Defendant's due process rights are not being

violated by the trial's delay. "Detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal [of preventing danger to the community].'" *United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)).

> Like other circuits, we find that the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis, for the clause establishes no specific limit on the length of pretrial confinement. In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989) (internal citations omitted).

Moreover, a detainee is entitled to reopen his detention hearing if he presents new and material evidence bearing on the issue whether there are conditions of release that will reasonably assure his appearance at trial. *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). Under the Bail Reform Act, "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f)(2)(B); *see also, United States v. Stanford*, 341 Fed. Appx. 979, 984 (5th Cir. 2009). The delays that this case has experienced (and will likely continue to experience) constitute a material change in circumstance that requires a reexamination of the detention issue in light of the newly learned information.

When reviewing a Magistrate's order of detention, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release. *United States v. Reuben*, 974 F.2d 580, 585 (5th Cir. 1992); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not

reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citation omitted). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required," a court must consider: "(1) the nature and circumstances of the offense charged ...; (2) the weight of the evidence against the person; (3) the history and characteristics of the person ...; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In ascertaining whether risk of flight warrants detention, "the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance." *Fortna*, 769 F.2d at 250 (citation omitted).

....

A.    The non-speculative nature of Mr. Cooper's future detention offends due process.

The future detention being faced by Mr. Cooper in this instance is non-speculative. It has been stated by Judge Lynn that the trial in this case will not occur prior to at least late January of 2019. Therefore, it is a certainty that, if not released, Mr. Cooper will have been detained for at least 36 months prior to proceeding to trial. This delay has not been caused by any decision or action on behalf of Mr. Cooper, but rather due to additional defendants being added, each time causing newly appearing counsel to rightfully request for continuances. It has also been caused by the continuing delays in producing full discovery. Although the Government continues to work diligently in providing all discovery to all Defendants, it is nevertheless troubling that they could not provide an estimated timeframe as to when discovery in this case would be complete. Therefore, even the late January trial date currently anticipated by Judge Lynn is optimistic at this point, and could potentially be pushed even further into the future.

If trial were to proceed in late January (the current optimistic goal), Mr. Cooper will have been detained for three years having not been convicted of any wrongdoing. Such a lengthy detention, when examined alongside the other factors in this case, would far exceed the regulatory purposes of pretrial detention and cross into the realm of being punitive in nature. As such, Mr. Cooper requests this Court to revoke the Magistrate's Order of Pretrial Detention.

B.    Conditions exist that could reasonably assure Mr. Cooper's future appearance.

When this issue has been analyzed in the past by the Fifth Circuit, the analysis focusing on weighing the *Hare* factors (identified above) to determine if the regulatory purpose of the detention (that is "securing [Cooper's] appearance against the real risk that he would flee the Court's jurisdiction") is outweighed by the punitive nature of such a lengthy detention of an otherwise presumed innocent individual. *United States v. Stanford*, 722 F. Supp. 2d 803, 809 (S.D. Tex. 2010), *aff'd*, 394 Fed. Appx. 72 (5th Cir. 2010). Here, any "real risk' of Mr. Cooper's fleeing has been completely mitigated and removed by the Government's aggressive and exhaustive seizure of all of Mr. Cooper's assets. In short, since the time of his initial arrest and detention hearing, the Government has successfully seized almost every available asset belonging to Mr. Cooper, leaving him with ostensibly zero financial resources.

Mr. Cooper no longer poses any "real" risk of fleeing. Nor is he a danger to the community. All of the assets and financial resources, including those located in Costa Rica, that gave the Court concern at the time of Mr. Cooper's initial detention hearing have been successfully identified and either seized by the Government, or at least made subject to forfeiture. Further, Mr. Cooper is able and willing to comply with any conditions or restrictions the Court feels are appropriate to assure his appearance at all future proceedings. His sister, Carolyn McCall has indicated that she is willing to allow John to move into her home, and to serve as a third-party custodian. Mr. Cooper is willing to submit to GPS monitoring, home detention, strict reporting requirements, and whatever other conditions this Court would feel necessary to ensure his compliance. ....

Mr. Cooper is ready and willing to agree to any reasonable conditions this Court feels are necessary to assure his future appearances. This includes maintaining a third-party custodian, surrender of any and all passports or travel documents, electronic monitoring, or home confinement. Substantively all of Mr. Cooper's assets, both domestic and abroad have been seized by the government over the pendency of this action. Any flight risk he may have presented at the time of his initial detention hearing has drastically decreased during his two years (thus far) confinement.

Therefore, Mr. Cooper respectfully requests this Court to revoke the Magistrate's Order of Detention and release Mr. Cooper on the least restrictive combination of conditions to reasonably assure his appearance.

Dkt. No. 342 at 1-7.

The government is opposed, explaining that,

-10-

[o]n at least two separate occasions, correctional staff at Fannin County jail caught the defendant misusing a laptop that had been provided to him to facilitate his review of discovery materials in this case. In November 2017, the defendant was observed listening to music and watching a film in violation of an agreement he and his attorney signed relating to the discovery laptop. Following the second violation, the defendant admitted that he had a DVD, and the laptop was confiscated. On March 2, 2018, the defendant and his attorney signed a new agreement that again permitted the defendant to have access to discovery materials on a computer. Three days later, the defendant filed a second motion to revoke the pretrial order of detention. Dkt. 342, Defendant's Second Motion to Revoke or Amend Magistrate's Order of Pretrial Detention ("Motion" or "Mot."). The defendant offers only one new ground for release, arguing that the length of his pretrial detention offends due process. The defendant, however, omits these critical facts:

• The defendant filed one motion to continue the trial date and consented to numerous defense motions to continue;

• The defendant has had personal access to discovery materials for several months and the only interruption to that access was caused by his own willful misconduct;

• The defendant's two court-appointed lawyers have had continual access to all discovery materials; and

• The most recent delay in the trial date was caused by the defendants' request for, and the government's willingness to provide, a set of previously produced discovery in a format that includes Bates labels and e-discovery load files.

 In any event, the defendant remains a flight risk and a danger to the community. There is no combination of conditions that will reasonably assure the appearance of the defendant at trial or safety of the community, and the defendant's continued detention does not offend due process.

I. Factual and Procedural Background

 A. Cooper Charged and Detained

 In February 2016, a grand jury charged Cooper in 11 counts of a 14-count indictment with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and paying and receiving illegal remuneration in violation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. Dkt. 3.

 The indictment alleged that Cooper and his coconspirators submitted false claims to TRICARE, the health care benefit program for members of the military and their families, for compounded prescription drugs, which prescriptions had been induced by the payment of illegal kickbacks to physicians, and by illegal kickbacks paid, or promise to be

paid, to TRICARE beneficiaries, and funneled through a fake charity the defendant created and funded. The indictment also alleged that Cooper received millions of dollars in illegal kickbacks from compounding pharmacies in exchange for prescription referrals. The indictment alleged that Cooper and his coconspirators caused an actual loss to TRICARE of more than $100 million.

Cooper was arrested and had his initial appearance before Judge Horan on February 23, 2016. Dkt. 12. The government filed a motion the same day seeking to detain Cooper pending trial on the basis that he was a flight risk, and requested a continuance of three days. Dkt. 14. Judge Horan ordered Cooper temporarily detained and, after Cooper requested additional time to prepare, set the detention hearing for March 1, 2016. Dkt. 15. On February 26, 2016, the government filed an amended motion for detention on the basis that Cooper also presented a risk of obstruction of justice and that he was a danger to the community. Dkt. 17.

Judge Horan conducted a detention hearing for Cooper and his codefendant, Richard Cesario, on March 1, 2016. Dkt. 24 & 27. At the conclusion of the hearing, Judge Horan ordered both defendants detained pending trial. Dkt. 25 & 28.

### B. The Defendant Sought One Continuance and Consented to Another

On March 7, 2016, the Court issued its first trial scheduling order, setting an initial trial date of May 2, 2016. Dkt. 30. On April 22, 2016, the Court granted a defense motion to continue, which the defendant did not oppose, resetting the trial to August 15, 2016. Dkt. 43.

On August 8, 2016, the defendant filed an unopposed motion to declare the case "complex" and to continue the August 15, 2016, trial date by 90 days. Dkt. 50. The Court granted the defendant's motion, designated the case complex, and reset the trial to November 8, 2016. Dkt. 51.

### C. A Superseding Indictment Caused a Two-Month Continuance

A superseding indictment filed in October 2016 named 10 additional defendants in the conspiracy count and increased the number of substantive illegal kickback counts against the defendant from 10 to 14. Dkt. 75. Due to the addition of these defendants, the Court reset the defendant's trial date from November 8, 2016, to January 9, 2017. Dkt. 167.

### D. The Defendant Consented to a Fourth Continuance

On December 12, 2016, four defendants filed a joint motion to continue the January 9, 2017 trial date, which was unopposed by all defendants. Dkt. 191, ¶8. On December 22, 2016, the Court vacated the January 9, 2017, trial date. Dkt. 198. On February 17, 2017, the Court set

a new trial date of October 23, 2017. Dkt. 214.

    E.    The Court Denied the Defendant's First Motion to Revoke or Amend the Pretrial Detention Order

On December 14, 2016, the defendant filed a motion seeking de novo review of the original pretrial detention order. Dkt. 194. The Court denied the motion as untimely and noted that, even if the Court exercised its direction to review the detention order, it would have denied it because the defendant failed to show any information that existed that was not known at the time of his detention hearing that had a material bearing on the detention inquiry. Dkt. 211.

    F.    The Defendant Signed a "Media Source Agreement" Enabling Him to Review Electronic Discovery While in Custody

On June 12, 2017, the defendant and his attorney signed a Media Source Agreement that permitted the defendant to use a laptop supplied by his attorney to review discovery materials during scheduled law library sessions. The defendant and his attorney certified that "all the information provided on this media source pertains only to discovery in this current court case [3:16-CR-060]."

    G.    The Defendant Consented to a Fifth Continuance

On August 31, 2017, defendant Walter Simmons filed a motion to continue the October 23, 2017, trial date. Dkt. 256. Defendant Cooper did not oppose the motion. *Id.* ¶9. On September 26, 2017, the Court vacated the October 23, 2017, trial date. Dkt. 259.

    H.    At Defendants' Request, Federal Public Defender Appointed as Discovery Coordinating Counsel

On October 4, 2017, the Court granted an unopposed joint defense motion to appoint the Federal Public Defender (FPD) as discovery coordinating counsel. Dkt. 264. In connection with this appointment, the parties had multiple discussions regarding discovery that had previously been produced to all the defendants and forensic computer evidence that had been made available for copying by the defendants. To assist the defendants, the government agreed to reproduce all of the previously produced discovery with Bates labels and a Summation load file, so that it could be hosted by the FPD and reviewed by the defendants on a modern e-discovery platform in a searchable format. The parties also discussed harvesting the user-created files from the forensic computer images and similarly producing them with Bates labels and load files.

The government provided multiple updates to the defendants on the status of this re-labeling project, which, unfortunately continues to take longer than initially anticipated. At all times, however, the discovery remained produced and available for inspection by the defendants.

    I.    Andrew Baumiller Pled Guilty to Conspiring with the

Defendant

On October 17, 2017, one of the defendant's coconspirators, Andrew Baumiller, pled guilty to Count One of the superseding indictment. Dkt. 277. Among other things, Baumiller admitted that he conspired with Cooper and others to commit health care fraud. Dkt. 273, ¶1. Baumiller stipulated that he discussed with Cooper the idea of compensating doctors and patients through a study as part of a marketing strategy targeting military veterans, which study Baumiller admitted was a "sham and was simply a pretext for paying kickbacks to incentivize doctors to write prescriptions and to incentivize patients to obtain prescriptions." Id. ¶7. Baumiller admitted that every commission Trilogy Pharmacy paid to Cooper prior to the end of January 2015 violated the Federal Anti-Kickback statute because Cooper was not an employee of Trilogy Pharmacy. Id. ¶18. Baumiller further admitted that, in early 2015, Trilogy Pharmacy began paying Cooper as if he were a W-2 employee of Trilogy Pharmacy in order to give a false appearance of compliance with the statutory and regulatory bona fide employee exception to the Anti-Kickback Statute. Id. ¶¶19-21. In addition to these general admissions, Baumiller specifically admitted making specific payments made to Cooper in violation of the Anti-Kickback Statute. Id. ¶23. Cooper is currently charged with the illegal receipt of three of those payments ($133,243.37 on 10/17/2014, $425,220.19 on 10/23/2014, and $353,528.72 on 05/08/2015). Dkt. 75, (Superseding Indictment Count 17); Dkt. 289 (Second Superseding Indictment Counts 19, 20, and 22).

J.   Correctional Staff Confiscated the Defendant's Discovery Laptop after Observing Him Violate the Media Source Agreement on Two Occasions

On November 5, 2017, the defendant was observed listening to music through the laptop instead of using it to review discovery. Two days later, correctional staff observed the defendant watching a film on the laptop. Upon questioning, the defendant admitted that he had a DVD. The laptop was then confiscated, provided to the U.S. Marshals Service, and returned to Mr. Whalen. [The government will offer testimony and/or documentary evidence concerning these violations at the March 26, 2018, hearing.]

K.   The Defendant Did Not Oppose a Tentative Trial Date of October 15, 2018

On December 5, 2017, the District Court's Coordinator emailed counsel for all parties inquiring whether an October 15, 2018, trial date would work. Eight defendants and the government responded that the October 15, 2018, date was acceptable. Counsel for the remaining defendants, including Cooper, either did not respond or did not include the government on their reply email. Although the October 15, 2018, trial

date was never formally entered, it appears that the defendant did not oppose continuing his trial to at least October 15, 2018.

L.      A Second Superseding Indictment Added Charges against the Defendant but Caused No Additional Delay

A second superseding indictment filed in January 2018 named one additional defendant in the conspiracy count and increased the number of substantive illegal kickback counts against the defendant from 14 to 16. Dkt. 289. The prior trial date remained vacated, and the proposed October 15, 2018, trial date remained unset.

M.      Defense Counsel Consented to Additional Delays beyond October 28, 2018

On February 28, 2018, the Court held a telephone status conference with all counsel. Dkt. 341, 348. During the call, the government provided an update on the status of providing Bates labeled discovery to the defendants, and, based on prior discussions with defense counsel, noted that there appeared to be a consensus among the parties that the proposed October 15, 2018, trial date was no longer realistic and that a trial date in January 2019 might be better. Tr. 6:2-25. The Court then polled counsel for each defendant regarding this update. Mr. Whalen raised the concern about "any lengthy delay" of the trial date due to his client's continued pretrial detention, but noted that a January 2019 date "would be acceptable." Tr. 7:18-8:9. Mr. Whalen added, "I would just be concerned if we go past January, March or April or the summertime." Tr. 8:9-10.

At the conclusion of the call, the Court stated, "I am not happy about a person being in custody for more than two years without getting a trial. And if there are persons who are in that circumstance—because I am hearing from the call that we can't go to trial for nearly a year from now, and if there are people in custody who think that that fact should cause a reconsideration of the custody determination, then you may file such a motion." Tr. 13:19-14:1.

The following day, March 1, 2018, the Court's law clerk emailed all counsel asking counsel to respond if they had a preference for a trial date of either January 22, 2019, or February 11, 2019. Counsel for three defendants, including one with a client in pretrial custody (Cesario), replied with a preference for the February date. The government and counsel for three defendants, including one with a client in pretrial custody (Fuller), replied with no preference, and counsel for the remaining defendants, including Mr. Whalen, either did not respond with a preference or did not copy the government on their reply.

N.      The Defendant's Access to a Discovery Laptop Reinstated

On March 2, 2018, the defendant signed a new Media Source Agreement, which was filed with the Court. Dkt. 347. The new agreement

-15-

> provides the defendant with the ability to review discovery materials "from 7 am to 1 pm in the law library." *Id.*
>
> The defendant's Motion [to Revoke] followed.
>
> ....
>
> A defendant can challenge a magistrate judge's order of pretrial detention in two ways. First, pursuant to 18 U.S.C. § 3142(f), a defendant can seek to reopen his detention hearing at any time if the magistrate judge "finds that additional information exists that was not known to the movant at the time of the hearing," if that information has "material bearing" on the detention inquiry.
>
> Second, pursuant to 18 U.S.C. § 3145(b) and Rule 59 of the Federal Rules of Criminal Procedure, a defendant can file a motion with the district court seeking revocation or amendment of the magistrate judge's detention order. A timely motion is reviewed de novo by the district court. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); see Dkt. 211 ("Any review by the district court following [a defendant's failure to appeal the magistrate judge's decision within 14 days] is discretionary and not a matter of right.").
>
> Although the defendant styled his motion as seeking de novo review by the district court under section 3145(b), the crux of his motion is based on the length of his pretrial detention, which he argues constitutes "newly learned information" sufficient to reopen the detention inquiry pursuant to section 3142(f). Mot. at 1, 4. Accordingly, on March 7, 2018, the Motion was referred to the Honorable Magistrate Judge David L. Horan for determination.
>
> The defendant's Motion should be denied under both methods and their applicable standards.

Dkt. No. 349 at 1-10 (footnote omitted).

According to the government, the detention hearing should not be reopened under 3142(f) because the length of pretrial detention may not be considered on a motion to reopen a detention hearing under *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989), and Cooper offers no other newly discovered information where he

> argues that he is no longer a flight risk because "[a]ll of the assets and financial resources, including those located in Costa Rica, that gave the Court concern at the time of Mr. Cooper's initial detention hearing have been successfully identified and either seized by the Government, or at least made subject to forfeiture." Mot. at 5-6.

-16-

The District Court previously considered and rejected this argument in this case by this defendant. See Dkt. 194, p. 8 ("Substantively all of Mr. Cooper's assets, both domestica [sic] and abroad have been seized by the government over the pendency of this action. Any flight risk he may have presented at the time of his initial detention hearing has drastically decreased during his ten months confinement."); Dkt. 211, p. 2 ("Having reviewed the parties' Motions and responses, the Court finds that none of the moving parties has shown that any information exists that was not known at the time of their detention hearing and that has a material bearing on whether there are conditions of release that will reasonably assure (1) the appearance of [defendant Cooper] as required, and (2) the safety of any other person and the community.").

Additionally, at the defendant's initial detention hearing, Special Agent Joseph McCardel of the Defense Criminal Investigative Service testified that law enforcement had been unable to account for all of the proceeds of Cooper's fraud. The evidence also showed that the defendant frequently dealt with large amounts of cash (financial documents showed approximately $900,000 in cash withdrawals and $110,000 in cash was seized from a safe deposit box in Florida) and Special Agent McCardel explained that the majority of the proceeds that Cooper received from the alleged fraudulent activity had not yet been seized or recovered. Special Agent McCardel testified that multiple safe deposit box keys were seized from Cooper's home and that law enforcement had not been able to match all of those keys up to actual safe deposit boxes.

In sum, despite the defendant's plea of insolvency, he remains a flight risk, notwithstanding the seizure of many of his assets.

Dkt. No. 349 at 10-12. The government also contends that Cooper remains a danger to

the community where "[n]one of the factual or legal arguments offered by the

defendant in his Motion [to Revoke] address, let alone overcome, the Court's finding

that he is a danger to the community"; where "[e]vidence presented at the defendant's

detention hearing showed that the defendant and his codefendant, Richard Cesario,

threatened their employees with physical harm or death if they turned against them";

where "[t]he evidence showed that Cooper and Cesario held a meeting shortly after

discovering the government's investigation into their business activities. One person

-17-

at the meeting told law enforcement that Cesario appeared nervous and agitated, and stated that Cesario threatened that he would put people on an 'extended vacation' if they were to turn on him, and that he or she interpreted this statement as meaning physical harm or death," and "Cesario stated that he could 'take care of anyone or anything' and that he had resources to 'take someone out.'" *Id.* at 12. The government explains that "Cesario referenced people he knows, who were former military/special forces, who could carry out his threats and make people 'disappear' if they ever got in his way" and that "Cooper was present at all times during this meeting." *Id.* at 12-13.

And, the government urges, "[t]he evidence also showed that these were not idle threats, and that Cooper and Cesario had the ability to make good on them. For example, Special Agent McCardel testified that 13 guns were recovered in the search of Cooper's home, including one M4 and one .50 caliber rifle, despite Cooper telling law enforcement that there were only two guns in his home. Special Agent McCardel also testified that six handguns were recovered from a truck that Cooper tried to conceal from law enforcement by parking it behind an office building the night before his arrest." *Id.* at 13. The government explains that Cooper's "danger to the community was specifically cited in the Magistrate Court's original detention order," *id.* (citing Dkt. No. 28 at 2 ("The evidence shows that witnesses told investigators that Defendant [Cooper] and his co-defendant Richard Robert Cesario stated an intend to do possible harm to any associates or employees who turned on them.")), and that Judge Lynn "did not disturb this finding," *id.* (citing Dkt. No 211).

And the government argues that Cooper's request for de novo review under

Section 3145(b) should be denied because the undersigned, as a magistrate judge, lacks

jurisdiction under Section 3145(b) and because Cooper's motion is untimely:

> Despite the order referring the defendant's motion to the Magistrate Judge, (Dkt. 344), the Magistrate Court lacks jurisdiction to decide the Motion under section 3145. An appeal from an order of detention can be determined only by the District Court having original jurisdiction over the case. 18 U.S.C. § 3145(b); *see United States v. Patterson*, No. 13-137, 2013 WL 5375438, at *3 (E.D. La. Sept. 24, 2013) (holding magistrate judge in charging district lacked jurisdiction to review detention order entered by magistrate judge in arresting district); *see also United States v. Cisneros*, 328 F.3d 610, 615 (10th Cir. 2003) ("The text of § 3145(a) supports the conclusion that a motion to revoke a magistrate judge's release order should be ruled on directly by a district judge.").

> Accordingly, to the extent the defendant's motion is viewed as a section 3145 appeal, the motion must be determined by the District Court.
> ....

> On January 26, 2017, the District Court denied the defendant's first motion seeking review of his order of detention. Dkt. 211. The Court held that defendant had waived his right to appeal his detention order because he waited 288 days to file the motion, well beyond the 14-day window establishing review as a matter of right. *Id.* at 1-2 ("Defendants Cesario and Cooper filed their Motions well after the deadline prescribed by Rule 59(a). Magistrate Judge Horan entered the detention orders as to these two Defendants on March 1, 2016; yet, Cesario did not file his initial Motion until August 26, 2016, and Cooper did not file his Motion until December 14, 2016. The Court therefore finds that Cesario's two Motions and Cooper's Motion are untimely, and it declines to exercise its discretion to review the magistrate judge's detention orders for these two Defendants.").

> The instant motion, filed over two years after the initial order of detention, is also untimely and the Court should decline to review it.

Dkt. No. 349 at 13-14.

Finally, the government further argues that Cooper's continued detention does

not offend due process:

> To the extent any court undertakes a review of the defendant's

pretrial detention, it should conclude that his continued detention does not offend due process, deny the Motion, and order him detained pending trial.

"In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay." *Hare*, 873 F.2d at 801.

A.     Previously Considered Hare Factors Weigh in Favor of Continued Detention

As set forth above, since entry of the original order of detention, both the seriousness of the charges against the defendant and the strength of the government's case against him have increased. With the addition of several substantive kickback counts, the defendant now faces a statutory maximum sentence of up to 90 years imprisonment. With an actual loss amount alleged in the second superseding indictment of "more than $100 million," the defendant's advisory sentencing guidelines could be as high as 360 months to life imprisonment if convicted at trial. Additionally, the guilty plea of the defendant's coconspirator Andrew Baumiller, significantly increases the weight of the evidence against the defendant.

The defendant also failed to offer any new evidence concerning his flight risk or danger to the community. The District Court denied the defendant's first motion to revoke detention on this basis and should do so again here.

Indeed, the only truly new development in this case that is relevant to a decision to release the defendant on conditions of pretrial release, is the fact that the defendant cannot be trusted to honor his word and to obey simple rules concerning his use of a discovery laptop. If the defendant violates these simple rules, how can he be trusted to follow the Court's instructions regarding appearing at trial and refraining from threatening or harming witnesses against him, whose identities he now knows?

Simply put, he cannot.

B.     Previously Unconsidered Hare Factors Weigh in Favor of Continued Detention

The only *Hare* factors not previously considered by either the Magistrate Court or the District Court in this case are the complexity of the case, the length of the defendant's pretrial detention, and which side

caused any delay. All of these factors weigh against the defendant's release and in favor of continued detention.

**Complexity of the Case.** As set forth above, the complexity of the case was known by the defendant when he moved to declare the case complex on August 8, 2016, four months prior to his first motion to revoke detention, which was rejected by the District Court.

**Cause of Delay.** As set forth above, with the exception of a single two-month delay caused by the filing of the first superseding indictment (from November 8, 2016, to January 9, 2017), the defendant has consented to, or affirmatively asked for, every continuance of the trial date in his case. While the government bears some responsibility for the time it has taken to reproduce discovery in a Bates-labeled format requested by the defendants, it is the defendants who have sought continuances of the trial date on this basis, not the government. Indeed, the government has produced discovery to the defendants and Cooper previously had, and recently regained, the ability to review it while in custody. Critically, the defendant makes no allegation or argument that lack of Bates labels on the discovery he has prevented him in any way from reviewing the discovery or prevented him from assisting his attorneys in the preparation of his defense. The defendant has not moved to sever his case to avoid further delays, and his attorney represented to the District Court that a trial date in January 2019 "would be acceptable" and that he would only be concerned if the trial date continued pas "January, March or April or the summertime" of 2019.

The government is fully cognizant of the discovery reproduction issues in this case and is working diligently to satisfy the defendants' requests and the expectations of the Court. The government is optimistic that Bates-labeled discovery and e-discovery load files will be produced in sufficient time enable all of the parties to prepare for the proposed January or February 2019 trial date without the need for any additional continuances.

**Length of Delay.** Assuming the defendant's trial starts on the latter of the two proposed trial dates, the defendant will have been in pretrial custody a total of 35 months upon the commencement of trial. While this period of detention weighs in the defendant's favor, it is not dispositive. *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) (reversing district court's order releasing defendants, holding 31 month pretrial detention weighs in favor of release but "is not, however, dispositive"); *see United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993) ("The length of a detention period will rarely by itself offend due process."). Indeed, the Fifth Circuit has cited with approval two cases from the Second Circuit involving pretrial detention periods of 30 and 33 months. *United States v. Stanford*, 394 Fed. App'x 72, 75 (5th Cir. 2010)

-21-

(citing *Millan*, 4 F.3d at 1044 and *United States v. El-Hage*, 213 F.3d 74, 77-79 (2d Cir. 2000)). Other district courts have held that similar or longer periods of pretrial detention do not offend due process. *United States v. Akinola*, No. CR 11-310, 2016 WL 3566958, at *2 (D.N.J. June 28, 2016) (pretrial detention of over five years did not violate due process); *United States v. Swinton*, 251 F. Supp. 3d 544, 555 (W.D.N.Y. 2017) (pretrial detention of over four years did not violate due process); *United States v. Newebern*, No. 15-CR-98-FPG-2, 2018 WL 1250018, at *7 (W.D.N.Y. Mar. 12, 2018) (pretrial detention of 37 months did not violate due process); *United States v. Zhang*, No. 12-498, 2014 WL 5285928, at *5 (E.D. Pa. Oct. 16, 2014) (pretrial detention of 30 months did not violate due process).

In another significant health care fraud case in this district, a defendant was detained for 48 months and 10 days before his trial started. *See United States v. Roy*, 3:12-CR-54-L, Dkt. 13, 398, 742. However, unlike Dr. Roy, who presented only a risk of flight, the defendant in this case has been found to be both a flight risk and a danger to the community. Dkt. 28 at 2.

Dkt. No. 349 at 15-19.

Prior to the hearing, Cooper also sent a pro se letter to the undersigned to press his reasons for seeking pretrial release. *See* Dkt. No. 352.

The undersigned held a hearing on the Motion to Revoke on March 26, 2018, at which Cooper, his counsel, and the government's counsel appeared.

## Legal Standards

The Court is required under the Bail Reform Act to "order the pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA

Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a), unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

If release under Section 3142(b) on personal recognizance or an unsecured appearance bond will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, the Court is directed to release a defendant "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person – (I) remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court, if the designated person is able reasonably to assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community; (ii) maintain employment, or, if unemployed, actively seek employment; (iii) maintain or commence an educational program; (iv) abide by specified restrictions on personal associations, place of abode, or travel; (v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; (vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency; (vii) comply with a specified curfew; (viii) refrain from possessing a firearm, destructive device, or other dangerous weapon; (ix) refrain from excessive use of alcohol, or any use

-23-

of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner; (x) undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specified institution if required for that purpose; ... and (xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Byrd*, 969 F.2d 106, 108 (5th Cir. 1992).

"If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1); *accord Byrd*, 969 F.2d at 108.

Thus, "[u]nder the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Hare*, 873 F.2d at 798. But, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). "[A] detention order may rest on a determination that no condition or combination of conditions will reasonably assure either the defendant's appearance *or* the safety of the community." *Hare*, 873 F.2d at

-24-

799 (emphasis in original).

18 U.S.C. § 3142(f)(2) further provides that a detention "hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Under Section 3142(f)(2), the United States Court of Appeals for the Fifth Circuit has "interpreted th[e] standard as asking whether any 'new' information was presented." *United States v. Stanford*, 367 F. App'x 507, 510 (5th Cir. 2010) (citing *Hare*, 873 F.2d at 799; *United States v. Stanford*, 341 F. App'x 979, 984 (5th Cir. 2009) ("It cannot therefore be said that [the witnesses'] testimony was newly discovered or previously unavailable.")).

The Court may reject a motion to reopen because the evidence to be presented is not new or because it would not be material. *See Hare*, 873 F.2d at 799 ("Hare seeks a second hearing on various statutory grounds. First, he seeks to have his sister, mother, and a friend testify that he appeared whenever required to do so during prior prosecutions. He would also offer evidence of his exemplary conduct as an electrician while detained and of the fact that his pretrial incarceration will last considerably longer than usual. Under the Bail Reform Act a hearing may be reopened at any time before trial 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of

-25-

risk of flight or dangerousness].' We agree with the district court that the testimony of Hare's family and friends is not new evidence. Nor can the length of his current or potential future detention be considered under this section since it is not material to the issue of risk of flight or dangerousness. Given Hare's past record of narcotics convictions and the seriousness of the present charges, the district court did not abuse its discretion in finding that Hare's work as an electrician and selection as a trustee while in detention is not sufficiently material to the issue of dangerousness to justify a second hearing." (footnote omitted)); *accord Stanford*, 367 F. App'x at 510-11.

And, "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). "Section 3145 also requires that the revocation motion be filed with the court having original jurisdiction over the offense, but unlike § 3142(f), § 3145 does not require that new information be available before a release or detention order can be reconsidered and revoked." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003).

## Analysis

Cooper's Motion to Revoke relies on Section 3145(b). He also invokes Section 3142(f)(2). He asserts, primarily, that the non-speculative nature (and length) of his future detention offends due process and that conditions exist that could reasonably assure his future appearance.

II.     18 U.S.C. § 3142(f)(2)

Turning first to Section 3142(f)(2), the Fifth Circuit panel in *Hare* already held that "the length of [a defendant's] current or potential future detention [cannot] be considered under this section since it is not material to the issue of risk of flight or dangerousness." 873 F.2d at 799.

Otherwise, as new evidence, Cooper points to "the Government's aggressive and exhaustive seizure of all of Mr. Cooper's assets" and contends that, "since the time of his initial arrest and detention hearing, the Government has successfully seized almost every available asset belonging to Mr. Cooper, leaving him with ostensibly zero financial resources." Dkt. No. 342 at 6. But in his first motion to revoke his detention order, Cooper contended in December 2016 that, "[s]ubstantively all of Mr. Cooper's assets, both domestic and abroad have been seized by the government over the pendency of this action. Any flight risk he may have presented at the time of his initial detention hearing has drastically decreased during his ten months confinement." Dkt. No. 194 at 8. And Judge Lynn denied that motion, concluding that, "[h]aving reviewed the parties' Motions and responses, the Court finds that none of the moving parties has shown that any information exists that was not known at the time of their detention hearing and that has a material bearing on whether there are conditions of release that will reasonably assure (1) the appearance of any of the four Defendants who has filed, or is the subject of, a motion to revoke a detention order, as required, and (2) the safety of any other person and the community." Dkt. No. 211 at 2.

Cooper has not pointed to anything materially new as to his current lack of

resources to upset that determination under Section 3142(f)(2) by the presiding judge. And, as the government points out, Cooper did not argue in his motion there is new evidence that would have a material bearing on the issue whether there are conditions of release that will reasonably assure the safety of any other person and the community if Cooper were released.

At the hearing, Cooper, through a proffer by his counsel, presented evidence of support he has from family and friends and that he could – as he proposed at his original detention hearing – live with his sister in Bryan, Texas; that other family members, including his children, will soon be moving to nearby College Station, Texas; and that his sister had Cooper's passport with her in court and could surrender it as directed. But this evidence is either not information that was not known to Cooper at the time of the original March 1, 2016 detention hearing or is not information that has a material bearing on the issue whether there are conditions of release that will reasonably assure Cooper's appearance of such person as required and the safety of any other person and the community if he is released, for purposes of 18 U.S.C. § 3142(f)(2). The undersigned considered Cooper's family, particularly his sister, as a potential third-party custodian as well as possible conditions to restrict any international travel when ordering him detained.

The undersigned finds that Cooper has presented no basis to reopen his detention hearing under Section 3142(f) and recommends that the Court deny his Motion to Revoke to the extent that it is based on a request to reopen under Section 3142(f)(2).

II.   18 U.S.C. § 3145(b)

That leaves Cooper's reliance on Section 3145(b), which Cooper invokes to raise

his due process challenge to continued pretrial detention. As another judge in this

district has explained in a similar procedural posture,

> [a]lthough [Cooper's] argument is unavailing under § 3142(f), it does
> present the question whether his continued detention is permissible
> under the Due Process Clause of the Fifth Amendment. In *Hare* the panel
> held that "[b]ecause pretrial detention under the [Bail Reform] Act is
> regulatory, not penal, it does not constitute 'impermissible punishment
> before trial' that would violate due process." *Hare*, 873 F.2d at 800
> (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 95
> L. Ed. 2d 697 (1987)). But the panel indicated that detention that was
> excessively prolonged could become punitive, and therefore prohibited by
> the Due Process Clause. *See id.* It stated that the district court must
> consider on a case-by-case basis
>
>> not only factors relevant in the initial detention decision,
>> such as the seriousness of the charges, the strength of the
>> government's proof that the defendant poses a risk of flight
>> or a danger to the community, and the strength of the
>> government's case on the merits, but also additional factors
>> such as the length of the detention that has in fact occurred
>> or may occur in the future, the non-speculative nature of
>> future detention, the complexity of the case, and whether
>> the strategy of one side or the other occasions the delay.

> *Id.* at 801.

*United States v. Simpson*, No. 3:09-cr-249-D(06), 2010 WL 3283053, at *2 (N.D. Tex.

Aug. 19, 2010).

The undersigned understands the government's argument that a Section 3145(b)

motion is untimely and its objection to a magistrate judge's reviewing a release or

detention order under Section 3145. But this is an unusual situation. Cooper invokes

Section 3145(b) only as a vehicle to raise the due process challenge to his continued

detention, as Judge Lynn invited him to do.

Often, as here, a due-process challenge to continued detention could not, as a practical matter, be filed only on or before a date 14 days after the original detention order is entered. And Fifth Circuit law permits these challenges but forecloses Section 3142(f)(2) motions to reopen – which are not subject to any fixed time limits for filing – as a vehicle to raise them. *See Hare*, 873 F.2d at 799-801. Accordingly, the Court should not deny this particular motion as untimely or, at least, should exercise its discretion to review the substance of the motion even if it is technically untimely under Section 3145 and Federal Rule of Criminal Procedure 59(a). *See* Dkt. No. 211 at 1-2.

Further, Cooper filed the motion as addressed to Judge Lynn as the presiding judge in compliance with Section 3145(b)'s text and structure. Judge Lynn then referred the motion to the undersigned. Nothing in the authority that the government cites or 18 U.S.C. § 3145 itself dictates that – or explains why – the presiding judge may not, in appropriate circumstances, refer a Section 3145(b) motion to a magistrate judge under 28 U.S.C. § 636(b)(1)(B).

In *Patterson*, the magistrate judge in a charging district engaged *sua sponte* in a de novo Section 3145(b) review of a detention order issued by the magistrate judge in an arresting district. *See* 2013 WL 5375438, at *3. The undersigned agrees, as the district judge ruled in that case, that Section 3145 does not grant a magistrate judge authority to do that. But that is not what is happening here.

In *Cisneros*, the United States Court of Appeals for the Tenth Circuit held that "[t]he text of § 3145(a) supports the conclusion that a motion to revoke a magistrate

-30-

judge's release order should be ruled on directly by a district judge." 328 F.3d at 615.

In that case, a magistrate judge in the arresting district (the District of Arizona)

ordered a defendant released; the government then filed a motion to revoke that order

in the charging district (the District of New Mexico); and, "[a]lthough the government

properly filed its revocation motion in the New Mexico district court, the review of the

Arizona release order was conducted in the first instance by Magistrate Judge Svet."

*Id.* at 612-15. But the Tenth Circuit's decision does not make clear whether the district

judge in that case formally referred the motion to the magistrate judge for

determination or recommendation under 28 U.S.C. § 636(b)(1) and instead explains

that "[o]nly after Judge Svet entered his detention order, and Cisneros appealed it, did

District Judge Armijo consider the government's motion. This is improper procedure

for processing a § 3145(a) motion. The motion should be considered and ruled upon in

the first instance by a district judge in the court of original jurisdiction." *Id.* at 615; *see*

*also Patterson*, 2013 WL 5375438, at *2 (explaining that, in *Cisneros*, "the defendant

was arrested in Arizona on the basis of a federal indictment returned in New Mexico";

"[a] magistrate judge in Arizona held a detention hearing and released the defendant

on her own recognizance"; "[t]he defendant was subsequently arraigned before

Magistrate Judge Don Svet in New Mexico, who 'adopted' the release conditions

imposed by the magistrate judge in Arizona"; "[a]pproximately one month later, the

Government moved Magistrate Judge Svet to revoke the defendant's release order";

"Magistrate Judge Svet held a hearing, during which he considered the transcripts of

the Arizona detention hearing, as well as additional evidence introduced by the

government"; "[a]t the conclusion of the hearing, Magistrate Judge Svet granted the government's motion and ordered that the defendant be detained pending trial"; and "[t]he defendant appealed this decision to a New Mexico district judge who, after conducting a hearing, affirmed").

The Bail Reform Act authorizes magistrate judges to address certain matters – if they are otherwise so authorized within their districts – without a formal reference under Section 636(b) from the presiding district judge in a particular case. *See, e.g.*, 18 U.S.C. § 3142(a). Taking up a Section 3145 motion to review or appeal a release or detention order – which must be filed as addressed to the presiding judge in the first instance – is not one of those matters. And the Fifth Circuit has long held that, "[w]hen the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citing *Fortna*, 769 F.2d at 249 ("When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release.").

But, consistent with this authority, another judge has persuasively explained in the related context of a motion filed with the presiding judge raising a Section 3145(a) challenge to a release order entered by a magistrate judge in the arresting district, that

there appears to be absolutely no reason why the district judge

-32-

> conducting the review cannot initially refer the review to a magistrate judge in his own district on a report and recommendation basis. The statute does not prohibit it, and addressing the issue of detention is hardly foreign territory to a magistrate judge since it is one of a magistrate judge's core responsibilities. Moreover, a report and recommendation provides the district judge with the same opportunity to conduct a *de novo* review that would occur if the district judge handled the review personally in the first instance. 28 U.S.C. § 636(b)(1).

*United States v. Ross*, No. 1:05-CR-160, 2007 WL 1295995, *2 (W.D. Mich. Apr. 6, 2007).

Similarly, the undersigned concludes that, on a referral under Section 636(b)(1)(B), the undersigned does not lack jurisdiction to consider Cooper's Section 3145(b) motion raising a due process challenge to his detention order and that issuing findings, conclusions, and a recommendation is the appropriate course on Judge Lynn's referral – and not declining to act at all or returning the motion to Judge Lynn – is the appropriate course here. *Compare United States v. Taylor*, Crim. A. No. 2:14-00240, 2014 WL 7187842, at *3 & n.1 (S.D. W. Va. Dec. 16, 2014).

Turning to the substance of Cooper's challenge, other than asserting that any assets that concerned the undersigned previously have been seized – although Cooper's counsel acknowledged at the March 26, 2018 hearing that Cooper still owns the condo in Costa Rica – Cooper relies primarily on facts that were known to him at the time of the original detention hearing; that Judge Lynn was already presented with in Cooper's prior request for de novo review under Section 3145(b) of the evidence supporting Cooper's detention; or that, as discussed above, do not have a material bearing on the risk of nonappearance or danger to the community analyses under

-33-

Section 3142(f).

Accordingly, the facts and reasoning underlying the initial decision on detention support Cooper's continued detention under the first *Hare* factor. *Accord id.*

The government also presented new evidence at the hearing – by, without objection, proffer of counsel – that Cooper was noncompliant with Judge Lynn's order and rules and regulations of Fannin County Jail in connection with his use of a laptop computer to review discovery materials for this case when he was found watching a movie and listening to music on the laptop in his cell.

As to the length of the detention that has in fact occurred or may occur in the future and the non-speculative nature of future detention, the undersigned will assume – as Cooper does in support of his motion – that the trial will commence in February 2019 and no sooner than January 2019. At that time, Cooper would have been detained for approximately 35 months, or just under 3 years.

"Although the length of pretrial detention is one factor courts are to consider, it alone is not dispositive and carries no fixed weight in a due process analysis." *United States v. Stanford*, 722 F. Supp. 2d 803, 807 (S.D. Tex. 2010), *aff'd*, 394 F. App'x 72 (5th Cir. 2010). "Indeed, length of detention will rarely by itself offend due process." *Stanford*, 722 F. Supp. 2d at 807-08 (internal quotation marks omitted).

As the government explains, other courts have held that pretrial detention periods of similar or slightly shorter durations do not violate due process. *See* Dkt. No. 349 at 18 (collecting cases); *accord Stanford*, 722 F. Supp. 2d at 809 (collecting cases); *see also United States v. Quinones-Davila*, Crim. A. No. 2016-0009, 2018 WL 834604,

at *9 (D.V.I. Feb. 10, 2018) ("After consideration of the relevant factors under the circumstances presented, courts have found pretrial detention periods as long as forty-one months, *United States v. Casas*, 425 F.3d 23, 34 (1st Cir. 2005), thirty to thirty-three months, *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000), and thirty-two months, *United States v. Melendez-Carrion*, 820 F.2d 56, 60-61 (2d Cir. 1987), to be constitutional."). Other courts outside this circuit have expressed more concern about pretrial detention of this or similar duration. *See United States v. Rush*, No. S1-4:14 CR 88 RWS(SPM), 2017 WL 6541436, at *4 (E.D. Mo. Dec. 1, 2017) ("Although no one factor is dispositive, a review of the cases confronting due process challenges suggests that the longer the detention, the more weighty countervailing concerns must be. Where pretrial detention is very long, typically two years or more, continued detention is justified only where the government is not responsible for any significant portion of the delay and special circumstances indicate that the defendant's release would pose an extraordinary threat to the legitimate regulatory goals requiring pretrial detention."); *United States v. Hofstetter*, No. 3:15-CR-27-TAV-CCS, 2017 WL 4079181, at *6 (E.D. Tenn. Sept. 14, 2017) ("Courts have held that periods of detention exceeding two years did not violate due process, when the case was complex. .... In cases in which the length of pretrial detention exceeds two years, courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention." (internal quotation marks omitted)).

As for the complexity of the case, "[w]hen the complexity of a case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal." *Stanford*, 722 F. Supp. 2d at 810 (citing *Hare*, 873 F.2d at 801). As the government notes, Cooper successfully moved to declare this case complex. *See* Dkt. Nos. 50 & 51. And, on the present record, "[n]othing that has transpired in the case since the court first reached this conclusion has undermined this determination. In fact, subsequent proceedings ... have confirmed the complexity of the case." *Simpson*, 2010 WL 3283053, at *3; *accord Stanford*, 722 F. Supp. 2d at 810 ("The complexity of this case has necessitated a lengthier pretrial period, which Stanford has acknowledged and, indeed, sought." (citation and footnote omitted)). This factor weighs against Cooper's due process claim.

And, as to the fourth *Hare* factor, "'[a]ny delay occasioned by prosecutorial strategy may be a basis upon which an exceedingly lengthy pretrial detention offends due process.'" *Simpson*, 2010 WL 3283053, at *3 (quoting *Stanford*, 2010 WL 2745780, at *4, and explaining that "[t]here is no basis in the record to find that the government has delayed this case for strategic reasons"). "But delays caused by the defendant do not raise due process problems." *Stanford*, 722 F. Supp. 2d at 810.

At the March 26, 2018 hearing, Cooper's counsel took issue with the government's creating delays through its decision to only charge Cooper and Richard Cesario in its February 2016 original indictment and then add 10 more co-defendants in the October 2016 superseding indictment and another co-defendant in the January 2018 second superseding indictment. But Cooper's counsel also acknowledged that

Cooper does not claim that the government has intentionally charged the case as it has in order to inflict punishment on Cooper pretrial.

This is not a case in which the undersigned can say that "it can not be reasonably argued that the United States has occasioned any delay in this case, and [Cooper] points to no conduct by the United States that may be responsible for the duration of his detention." *Stanford*, 722 F. Supp. 2d at 810. The Fifth Circuit in *Hare* cited with the approval the test developed by the United States Court of Appeals for the Second Circuit, which includes as a factor "the extent to which the prosecution bears responsibility for the delay in starting trial." *United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988) (cited at *Hare*, 873 F.2d at 801 n.24; citing and following *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986)).

And the Second Circuit's seminal *Gonzales Claudio* decision noted that "[w]e need not determine with precision the amount of pretrial delay attributable to the prosecution, nor assess the extent to which the Government may have been at fault in contributing to the delay. It suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits." 806 F.2d at 342-43 (distinguished in *Stanford* , 722 F. Supp. 2d at 808 n.3, because, in *Gonzales Claudio*, "the defendants were facing potential pretrial detention of twenty-two months" and "[t]he court noted that prosecutorial delay – including the government's delay in disclosing the existence of certain evidence – was 'significant enough to add

considerable weight to the defendants' claim that the duration of detention has exceeded constitutional limits,'" which was "not the case" in *Stanford*); *accord Rush*, 2017 WL 6541436, at *5 ("Thus, delay caused even by neutral reasons, such as strategic case management choices that foreseeably extend the case, may be attributable to the government.").

More recently, another district court following this line of authority found "that twenty-six and one-half (26 ½) months of delay in the trial resulting from the multiple superseding indictments and from the extended time necessary to provide discovery is attributable to the Government" and that, "[a]lthough the Government was not 'at fault' for this delay, its actions and choices have, in large measure, caused the delay and, thus, it is 'responsible.'" *Hofstetter*, 2017 WL 4079181, at *9. In so finding, the court observed that "[m]atters of who to prosecute and for what charges and at what point in the investigation are all within the prosecutor's discretion" but that "these are choices made by the Government, not the Defendant, and are properly attributed to the Government" and that "[o]ther courts have also attributed delay resulting from voluminous discovery to the government." *Id.* at *7-*9 (citing and discussing *United States v. Rodriguez*, No. 09-CR-331A, 2012 WL 6690197, *1, *12-*13 (W.D.N.Y. Dec. 21, 2012); *United States v. Aileman*, 165 F.R.D. 571, 593-94 (N.D. Cal. 1996); *United States v. Gallo*, 653 F. Supp. 320, 343 (E.D.N.Y. 1986)).

By the government's own account, the first superseding indictment filed in October 2016 named 10 additional defendants in the conspiracy count and increased the number of substantive illegal kickback counts against the defendant from 10 to 14,

and, due to the addition of these defendants, the Court reset the defendant's trial date from November 8, 2016, to January 9, 2017. Some of the newly added defendants then filed a joint motion to continue the January 9, 2017 trial date, which was unopposed by all defendants, and the Court vacated the January 9, 2017, trial date and set a new trial date of October 23, 2017. The government chose how to indict the case in February 2016, and – without attributing "fault" or suggesting any ill motives – its charging decisions combined with the long-known volume of discovery led to extended delays that – while neutral as to any "fault" and driven in part by Cooper's counsel's view that seeking a severance would be infeasible in light of Fifth Circuit case law – foreseeably extended the case and are properly attributable to the government.

The undersigned's analysis of the *Hare* factors applied to this case compel the determination that Cooper's continued pretrial detention does not offend due process. 35 months of pretrial detention is unusually long, and at least some portion of the length of delay in going to trial is attributable to the government. But it appears clear that the case will go to trial early next year, and it is unavoidably complex because of the nature of the charges. Further, nothing has changed in Cooper's favor as to the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits.

On the particular facts and circumstances presented here, the undersigned finds that Cooper's non-speculative present and future detention will not be excessively prolonged to the point of becoming punitive and therefore prohibited by the Due

Process Clause, and the undersigned therefore recommends that Cooper's motion under Section 3145(b) for release on those grounds should be denied.

## Recommendation

For the reasons explained above, the Court should deny Defendants John Paul Cooper's Second Motion to Revoke or Amend Magistrate's Order of Pretrial Detention [Dkt. No. 342].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 2, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE